■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v ANDREL C. BROOKS, Appellant. [701 NYS2d 529] —Crew III, J. Appeal from a judgment of the County Court of Broome County (Mathews, J.), rendered February 6, 1998, upon a verdict convicting defendant of the crimes of conspiracy in the second degree, criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree.

Defendant appeals from his conviction and sentence, after trial, for conspiring to commit the crimes of criminal sale of a controlled substance and criminal possession of a controlled substance, as well as the substantive crimes of criminal possession of a controlled substance in the first degree and criminal possession of a controlled substance in the third degree for which he was sentenced, as a second felony offender, to concurrent indeterminate prison terms of 10 to 20 years, 20 years to life and 10 to 20 years, respectively. On this appeal, defendant contends that while the evidence established that he participated in a conspiracy with some, but not all, members of the charged conspiracy, there is legally insufficient evidence to prove that he was a member of a single integrated conspiracy. We disagree and affirm.

As a starting point, we note that in his motion for a trial order of dismissal, defendant did not advance the argument now raised on appeal. Rather, he contended that he was not a coconspirator at all. That being the case, defendant's argument on appeal has not been preserved for our review (*see, People v Gray*, 86 NY2d 10, 19). Nevertheless, were we to consider the claim in the interest of justice, we would find it to be without merit.

The record reflects that in 1994, James Pope began purchasing kilogram amounts of cocaine from a source in Miami, Florida, which he provided to dealers for distribution in Tompkins County, Broome County and Monroe County. In 1995 Pope, Darryl Charles and Luis Castro began purchasing their cocaine from Eddie Rodriguez in Puerto Rico. By this time, the enterprise had expanded to include distribution in the City of Newburgh, Orange County.

In January 1996 defendant, a resident of Detroit, Michigan, attended a funeral in Newburgh, where he met his cousin, Carol Brooks, who also was Pope's secretary. At Pope's request, Brooks recruited defendant for the purpose of distributing cocaine in Michigan. In the ensuing months, defendant either traveled to New York to secure cocaine for sale in Michigan or Pope's couriers delivered cocaine to defendant in Michigan for distribution. The evidence established that such deliveries were in kilogram and multiple kilogram amounts worth tens of thousands of dollars. Notably, on one occasion, when Pope felt that defendant's operation in Michigan was not producing sufficient profits, he warned defendant that if the situation was not rectified, he would replace the Detroit branch with outlets in New York City.

There can be no doubt that defendant entered into an agreement with Pope to distribute cocaine on behalf of Pope in Michigan. Defendant's contention that he was not part of a single integrated conspiracy because he was unaware of the origin of the cocaine, did not know that there was a broader operation in New York City, Broome County and North Carolina, and did not know any of his alleged coconspirators is without merit. The courts, in circumstances such as those present here, have found conspiracies based upon implied agreements on the theory that "one who deals in large quantities of narcotics may be presumed to know that he is a part of a venture which extends beyond his individual participation" (*United States v Magnano*, 543 F2d 431, 434, *cert denied* 429 US 1091). As was observed in *United States v Bruno* (105 F2d 921, 922, *revd on other grounds* 308 US 287), "the conspirators at one end of the chain knew that the unlawful business would not, and could not, stop with their buyers; and those at the other end knew that it had not begun with their sellers". Finally, where the evidence establishes that a coconspirator knew or had reason to know that other retailers were involved in a broad project for the retail sale of narcotics and had reason to believe that his or her own benefits derived from the operation probably were dependent upon the success of the entire venture, such is sufficient

to find him or her to be a member of a single conspiracy (*see, United States v Baxter*, 492 F2d 150, 158, *cert denied* 416 US 940).

Here, defendant regularly received large amounts of cocaine from Pope for which he received and repaid to Pope thousands upon thousands of dollars. While it is clear that defendant knew few of the coconspirators with whom he was charged, it is equally clear that he appreciated that Pope had other distributors and at one point was told that if his operation was not made more profitable that Pope would replace defendant's business with outlets in New York City. In our view, a rational trier of fact could have inferred a single integrated conspiracy from this evidence. We have considered defendant's remaining contentions and find them to be equally without merit.

Cardona, P. J., Mercure, Carpinello and Graffeo, JJ., concur. Ordered that the judgment is affirmed.