McCarthy, J.
Appeal from a judgment of the Supreme Court (Cerio Jr., J.), rendered June 17, 2009 in Broome County, upon a *1146 verdict convicting defendant of the crime of grand larceny in the third degree.
Defendant is a Freemason and member of Masonic Lodge 177 in the City of Binghamton, Broome County. In September 2003, while defendant was master of the lodge and his father, Clarence Brown, was treasurer, Brown withdrew $40,000 from the lodge’s bank account. The withdrawal included an $18,000 bank check payable to the Chenango County treasurer, which defendant used to pay his delinquent real property taxes on a parcel he owned in Chenango County, and a $1,000 check payable to defendant. When the withdrawal was discovered, defendant was charged with grand larceny in the third degree. After a jury found him guilty, Supreme Court* sentenced him to five months in jail, five years of probation and $19,000 restitution. Defendant appeals.
The evidence was legally sufficient and the verdict was not against the weight of the evidence. A person is guilty of grand larceny in the third degree when he or she, “with intent to deprive another of property or to appropriate the same to himself [or herself] . . . , wrongfully takes, obtains or withholds such property from an owner” and the property is valued in excess of $3,000 (Penal Law § 155.05 [1]; see Penal Law § 155.35 [1]; People v Bonneau, 94 AD3d 1158, 1159 [2012], lv denied 20 NY3d 985 [2012]). Larcenous intent — the only element challenged by defendant — “is rarely susceptible of proof by direct evidence, and must usually be inferred from the circumstances surrounding the defendant’s actions” (People v Russell, 41 AD3d 1094, 1096 [2007], lv denied 10 NY3d 964 [2008]). In a prosecution for larceny by embezzlement, it is a defense “that the property was appropriated under a claim of right made in good faith” (Penal Law § 155.15 [1]).
Defendant testified that he received the $1,000 check for reimbursement and the $18,000 was in exchange for a five-year lease on his Chenango County property, to be used by members of the lodge or as a camp for children, but he admitted that there was never a written lease agreement and members never used his property. Other members of Masonic Lodge 177 testified that they were not aware of any lease or the payment of $18,000 to defendant, and these topics were never discussed or voted on at a formal meeting as was required by the organization’s rules. No meeting minutes memorialize any such discussion or vote. Viewed in a light most favorable to the People and giving them the benefit of every favorable inference, the evi *1147 deuce was legally sufficient to establish defendant’s larcenous intent (see People v Lowin, 71 AD3d 1194, 1196-1197 [2010]; People v Russell, 41 AD3d at 1096). Neutrally weighing the conflicting evidence regarding whether defendant followed the proper procedure to obtain lodge funds, whether the membership voted on the disbursements, and whether minutes and financial records were lost or hidden by defendant or never created, and giving deference to the jury’s credibility determinations, the verdict was not against the weight of the evidence (see People v Bonneau, 94 AD3d at 1159; People v Holmberg, 243 AD2d 893, 895 [1997], lv denied 91 NY2d 874 [1997]).
County Court (Cawley, J.) did not err in allowing evidence of defendant’s uncharged prior conduct to show lack of mistake. Although evidence of uncharged crimes is generally inadmissible, the People may introduce such evidence if it is probative and relevant to a material issue, such as to show the absence of a mistake and negate an allegedly innocent state of mind (see People v Molineux, 168 NY 264, 293 [1901]; People v Bourne, 46 AD3d 1101, 1103 [2007], lv denied 10 NY3d 762 [2008]). Defendant contended that he believed the expenditure that covered his delinquent taxes was proper based on an alleged handshake deal for a lease. The court determined, based on this contention, that the People could introduce evidence that defendant had a fellow Mason write checks on Masonic Lodge 177’s account on five separate occasions for substantial amounts without any alleged handshake deals and without obtaining member approval through the procedure required under Masonic rules. The court also permitted defendant’s brother, who was a lodge member, to testify that defendant gave him two checks from a Masonic Lodge 177 account for the purpose of paying the brother’s back taxes and mortgage, despite these expenditures not being discussed or approved at a formal meeting of the members. Considering the defense that defendant was authorized to obtain the check in exchange for an oral lease, this testimony could assist the jury in determining his intent, was probative and relevant to show an absence of mistake by defendant regarding the $18,000 check, and was not unduly prejudicial (see People v Bourne, 46 AD3d at 1103; People v Wilcox, 194 AD2d 820, 820-821 [1993]).
Defendant was not deprived of his right to present witnesses in his defense. While a court implicates a defendant’s 6th Amendment rights when it prospectively precludes a defense witness from testifying, a defendant’s right to present evidence is not absolute, but is subject to rules of evidence and procedure (see Taylor v Illinois, 484 US 400, 410-411 [1988]; People v *1148 Kelly, 288 AD2d 695, 697 [2001], lv denied 97 NY2d 756 [2002]). “The accused does not have an unfettered right to offer testimony that is incompetent, privileged, or otherwise inadmissible under standard rules of evidence” (Taylor v Illinois, 484 US at 410; accord People v Bradford, 300 AD2d 685, 686 [2002], lv denied 99 NY2d 612 [2003]).
Supreme Court did not abuse its discretion by precluding defendant from offering irrelevant testimony. Defendant intended to present a witness who would testify that defendant discussed with her, in approximately 2004, the concept of creating a camp for children and investigating sources of financing. The court properly determined that these later discussions were not relevant as proof of defendant’s intent at the time that he received the $18,000 check in 2003. Defendant sought to introduce the testimony of Brian Sloat, a member of Masonic Lodge 177, that it was common practice in the area for Masons to not strictly adhere to Masonic rules, Masonic Lodge 177 had sufficient money and $18,000 would not put the lodge at financial risk, and there was animosity between defendant and his successor in the position of master who ultimately reported defendant to the police. The court ruled that Sloat could not testify with respect to the level of adherence to Masonic rules because he did not become a member until a few years after the events in question and his testimony therefore lacked relevance. The court also precluded Sloat from testifying with respect to whether $18,000 was a significant sum of money in comparison to the lodge’s finances, as this was irrelevant; theft of any amount of money is inappropriate. The court ruled that Sloat could testify about the animosity, but defendant declined to call Sloat for this limited purpose. Before the court issued any ruling regarding Cliff Olin, defendant withdrew his request to have that witness testify; hence, any argument regarding Olin is not properly before us. Given that Supreme Court’s rulings were premised on the irrelevant nature of the proposed testimony, the court did not abuse its discretion in precluding that testimony (see Taylor v Illinois, 484 US at 410; People v Bradford, 300 AD2d at 686).
Lahtinen, J.P., Stein and Egan Jr., JJ., concur. Ordered that the judgment is affirmed.

 This case was initiated in County Court, but was transferred to Supreme Court prior to trial.