Stein, J.
Appeal from a judgment of the Supreme Court (Lamont, J), rendered June 8, 2012 in Albany County, upon a verdict convicting defendant of the crimes of grand larceny in the third degree and criminal contempt in the second degree (two counts).
In April 2011, defendant agreed to purchase certain real property from the victim for approximately $367,000. Defendant informed the victim that he had funding through a Veterans Administration (hereinafter VA) program to finance the purchase. Over the next four months, the victim loaned defendant and defendant’s girlfriend, Joele Roberts, in excess of $6,000 in the form of cash, checks and cigarettes, all of which — according to the victim — defendant promised to repay at the closing of the real estate transaction. In August 2011, the victim became suspicious about these loans, particularly in view of the lack of progress with the closing, and filed a police report. Defendant was subsequently arrested and brought to the police department, where he was questioned by Detective Robert Wise and gave a statement. Thereafter, an order of protection was issued against defendant that prohibited him from, among other things, communicating with the victim. While that order was in effect, defendant called the victim two times.
Defendant was charged by indictment with one count of grand larceny in the third degree and two counts of criminal contempt in the second degree. His subsequent motion to suppress his *1059 statement to the police was denied after a Huntley hearing. Following a jury trial, defendant was found guilty as charged and was thereafter sentenced as a second felony offender to an aggregate prison term of 3V2 to 7 years. He was also ordered to pay $6,500 in restitution, plus interest. Defendant now appeals and we affirm.
We reject defendant’s claim that his statement to the police should have been suppressed because he invoked his right to counsel during his custodial interrogation. It is well settled that, under the NY Constitution, the right to counsel indelibly attaches when an accusatory instrument is filed or an individual in custody has retained an attorney in the matter under investigation or requests the assistance of an attorney (see People v Lopez, 16 NY3d 375, 380 [2011]; People v Grice, 100 NY2d 318, 321 [2003]; People v Ramos, 99 NY2d 27, 32-33 [2002]; People v West, 81 NY2d 370, 373-374 [1993]; People v Dashnaw, 85 AD3d 1389, 1390-1391 [2011], lv denied 17 NY3d 815 [2011]). However, where there is no “unequivocal” request for the assistance of counsel, the right to counsel does not attach (People v Glover, 87 NY2d 838, 839 [1995]; see People v Mitchell, 2 NY3d 272, 276 [2004]; People v Hicks, 69 NY2d 969, 970 [1987]; People v Engelhardt, 94 AD3d 1238, 1240-1241 [2012], lv denied 19 NY3d 960 [2012]; People v Horton, 46 AD3d 1225, 1226 [2007], lv denied 10 NY3d 766 [2008]).
Here, the People concede that defendant was in custody when he was questioned by Wise and gave his statement. It is also undisputed that, at that time, defendant had been given Miranda warnings and that an accusatory instrument had not been filed, and defendant does not contend that he had retained an attorney in the matter under investigation. Accordingly, the issue distills to whether defendant made an unequivocal request for the assistance of counsel. At the outset of the interview, defendant asked Wise if an individual named John Breeze — who defendant later explained was an attorney — could hear Wise’s questions. Wise immediately stopped the questioning and, when he explained to defendant that he was concerned that defendant might have invoked his right to counsel, defendant adamantly denied having done so. Defendant repeatedly told Wise that he was not invoking his right to counsel, insisted that he “did not say [that he] want[ed] an attorney present” and indicated that he wanted to talk to Wise. Under these circumstances, and according deference to Supreme Court’s credibility assessment that Wise “appeared frank, candid, and trustworthy, and his testimony had the general force and flavor of credibility” and that the video of the interrogation was authentic and reliable *1060 (see People v Kidd, 112 AD3d 994, 996 [2013]; People v Kuklinski, 24 AD3d 1036, 1037 [2005], lv denied 7 NY3d 758 [2006], lv denied on reconsideration 7 NY3d 814 [2006]), we will not disturb Supreme Court’s determination that defendant did not unequivocally invoke his right to have an attorney present (see People v Fridman, 71 NY2d 845, 846 [1988]; People v Engelhardt, 94 AD3d at 1240-1241; People v Oxley, 64 AD3d 1078, 1080 [2009], lv denied 13 NY3d 941 [2010]; People v Horton, 46 AD3d at 1226-1227; People v Wade, 296 AD2d 720, 720 [2002]). Therefore, defendant’s suppression motion was properly denied.
We also reject defendant’s argument that his conviction for grand larceny in the third degree was not supported by legally sufficient evidence. A person is guilty of that crime when he or she, “with intent to deprive another of property or to appropriate the same to himself [or herself] or to a third person, . . . wrongfully takes, obtains or withholds such property from an owner” and the value of the property exceeds $3,000 (Penal Law § 155.05 [1]; see Penal Law § 155.35 [1]; People v Brown, 107 AD3d 1145, 1146 [2013], lv denied 22 NY3d 1039 [2013]). Further, a larceny can occur by false pretenses when a defendant (1) obtains title or possession of money or personal property of another, (2) by means of an intentional false statement, (3) concerning a material fact, and (4) upon which the victim relied in parting with the property (see Penal Law § 155.05 [2] [d]; People v Drake, 61 NY2d 359, 362 [1984]; People v Trimmer, 30 AD3d 820, 822 [2006]).
Here, defendant’s legal sufficiency argument primarily focuses on the element of intent. “Larcenous intent ... ‘is rarely susceptible of proof by direct evidence, and must usually be inferred from the circumstances surrounding the defendant’s actions’ ” (People v Brown, 107 AD3d at 1146, quoting People v Russell, 41 AD3d 1094, 1096 [2007], lv denied 10 NY3d 964 [2008]). At trial, the People proffered evidence that defendant convinced the victim to make a series of loans to him and Roberts, totaling more than $6,000 in cash, checks and cigarettes. The victim testified that defendant told him that defendant had funding for the real estate transaction from a VA program and that he loaned defendant money after they began negotiating that transaction, based upon defendant’s assurances that he would repay the loans when the transaction closed.[1] Between April and August 2011, the victim gave three checks to defendant and/or Roberts, which totaled $3,028. The *1061 record also includes a written agreement signed by defendant in August 2011, setting forth the total amount owed by defendant to the victim.[2]
The victim also testified that he received multiple telephone calls and facsimiles from purported employees of the VA— including an individual who identified himself as Richard Wooderson — falsely indicating that defendant had VA funding for the real estate transaction. One facsimile — with a cover sheet on Department of Labor letterhead — which was purportedly written by Wooderson, indicated that it was sent from the “Dept of Vet Affairs” located at the “Stratton VA Home Program.” However, employees of the VA testified that there was no employee named Wooderson there.[3] The victim eventually came to believe that defendant was the person who made the telephone calls claiming to be Wooderson. As evidence thereof, the victim recounted an incident in August 2011 when, while in his car, he received a call from “Wooderson” during which Wooderson stated that the victim should give defendant another loan and again validated the real estate transaction. During this conversation, the victim pulled into his driveway and “heard the same voice coming from the upstairs apartment” where defendant was living, at which point he figured out that Wooderson was, in fact, defendant. In September 2011, the victim received an expected call from Wooderson and put the call on speaker phone in Wise’s presence to enable Wise to hear the conversation. At that point, Wise “heard [defendant] talking to [the victim] as [Wooderson] cancelling an appointment between the two of them.”[4]
When the foregoing evidence is viewed in the light most favorable to the People, there is a “valid line of reasoning and permissible inferences [that] could lead a rational person to the conclusion reached by the jury” (People v Bleakley, 69 NY2d 490, 495 [1987]; accord People v Pagan, 97 AD3d 963, 965 [2012], lv denied 20 NY3d 934 [2012]). Specifically, this evidence was legally sufficient to establish that defendant obtained from the victim money and goods valued at more than $3,000 with the intent to appropriate it to himself and/or Roberts by falsely stating that he had secured VA financing in order to purchase real property from the victim and that he would repay his debt *1062 to the victim at the closing and that, in reliance on those statements, the victim loaned defendant and Roberts such money and goods.
Defendant’s convictions for criminal contempt in the second degree are also supported by legally sufficient evidence. Such a conviction requires proof that “ ‘a lawful order of the court clearly expressing an unequivocal mandate was in effect’ and [that] the order was disobeyed by a person having knowledge of that order” (People v Roblee, 70 AD3d 225, 227 [2009], quoting Matter of Department of Envtl. Protection of City of N.Y. v Department of Envtl. Conservation of State of N.Y., 70 NY2d 233, 240 [1987]; see Penal Law § 215.50). At trial, the People proffered evidence that a September 2011 order of protection was issued against defendant, effective until April 1, 2012, which prohibited him from contacting the victim by any means, including by telephone or voice mail. The order of protection was issued in court, in defendant’s presence and was signed by defendant, indicating his receipt thereof. The victim testified — and defendant does not dispute — that, notwithstanding sáid order, defendant left two messages on the victim’s voice mail in November 2011.[5] This evidence was legally sufficient to establish defendant’s guilt of criminal contempt in the second degree (see People v Brown, 61 AD3d 1007, 1010 [2009]; People v McPherson, 32 AD3d 558, 559 [2006], lv denied 7 NY3d 868 [2006]; see also People v Darpino, 51 AD3d 1059, 1060 [2008], lv denied 11 NY3d 735 [2008]).
To the extent that defendant argues that his convictions are against the weight of the evidence, we are unpersuaded. Although a different verdict would not have been unreasonable, we are satisfied that the finding of guilt is supported by the weight of the credible evidence (see People v Romero, 7 NY3d 633, 643 [2006]; People v Ford, 110 AD3d 1368, 1370 [2013]).
We are similarly unpersuaded by defendant’s contention that Supreme Court erred by denying his objection to the People’s proffer of certain audio recordings, made by the victim on his own behalf, of telephone conversations he had with defendant, as well as messages left by defendant on the victim’s voice mail. Inasmuch as the statements on those recordings were neither made to a public servant or a person acting as an agent of law enforcement, the People were not required to provide defendant notice of their intention to offer them at trial pursuant to CPL 710.30 (1) and (2) (see People v Cole, 24 AD3d 1021, 1025 [2005], *1063 lv denied 6 NY3d 832 [2006]; People v Batista, 277 AD2d 141, 142 [2000], lv denied 96 NY2d 825 [2001]; People v Quinto, 245 AD2d 121, 121 [1997]; People v Rodriguez, 114 AD2d 525, 526 [1985], lv denied 66 NY2d 1043 [1985]; compare People v Wilhelm, 34 AD3d 40, 48 [2006]).
We also reject defendant’s argument that Supreme Court erred by taking a partial verdict at trial.[6] After the jury indicated that it had reached a verdict, the court started taking the verdict but, when the jury was polled on the larceny charge, one juror stated that she had made a mistake with her verdict. As a result, and over defendant’s objection, Supreme Court took the verdict on the two counts of criminal contempt and sent the jury back to further deliberate on the larceny charge. In our view, Supreme Court properly followed the procedure outlined in CPL 310.70 (1) (b), and there is no basis in the record to conclude that the court abused its broad discretion in accepting the partial verdict and then directing the jury to continue deliberations (see People v Bowman, 79 AD3d 1368, 1370 [2010], lv denied 16 NY3d 828 [2011]; People v Harris, 50 AD3d 1387, 1388-1389 [2008]; People v Gause, 38 AD3d 999, 1001 [2007], lv denied 9 NY3d 865 [2007]; compare People v Rivera, 15 NY3d 207, 210-211 [2010]).[7]
Finally, Supreme Court did not err in ordering restitution without a hearing. Inasmuch as the record clearly establishes the victim’s actual out-of-pocket loss and defendant did not request a hearing, no restitution hearing was required (see Penal Law § 60.27 [2]; People v Drew, 16 AD3d 840, 841 [2005]; see also People v Tzitzikalakis, 8 NY3d 217, 221 [2007]; People v Gazivoda, 68 AD3d 1346, 1347 [2009], lv denied 14 NY3d 840 [2010]). To the extent not specifically addressed herein, defendant’s remaining contentions have been considered and found to be lacking in merit.
Lahtinen, J.P., McCarthy and Egan Jr., JJ, concur.
Ordered that the judgment is affirmed.

. Defendant admitted that he and Roberts received loans from the victim, but denied that the loans were connected in any way to the real estate transaction.

. According to the victim, both he and defendant wrote the agreement.

. Another VA employee from whom a facsimile was allegedly received by the victim testified that he did not send it.

. Wise testified that he was very familiar with defendant’s voice and could tell that defendant was trying to disguise his voice during the conversation.

. Nor does defendant dispute the existence of the order of protection or that he signed it; he merely claims that he did not pay attention to what it was.

. Notwithstanding the People’s claim to the contrary, defendant properly preserved this argument for our review.

. Defendant’s argument that the partial verdict should have been rejected by Supreme Court as repugnant is unpreserved (see People v Hawkins, 110 AD3d 1242, 1244 [2013], lv denied 22 NY3d 1041 [2013]; People v McCottery, 90 AD3d 1323, 1326 [2011], lv denied 19 NY3d 975 [2012]) and, in any event, without merit.