People v Meadows (2020 NY Slip Op 01406)





People v Meadows


2020 NY Slip Op 01406


Decided on February 27, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: February 27, 2020

109943

[*1]The People of the State of New York, Respondent,
v
Kimani J. Meadows, Appellant.

Calendar Date: January 8, 2020

Before: Egan Jr., J.P., Lynch, Clark, Aarons and Reynolds Fitzgerald, JJ.


Mark A. Diamond, Albany, for appellant.
Weeden A. Wetmore, District Attorney, Elmira (Jordan J. Yorke of counsel), for respondent.



Aarons, J.
Appeal from a judgment of the County Court of Chemung County (Baker, J.), rendered October 30, 2017, upon a verdict convicting defendant of the crimes of attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree (three counts) and criminal use of a firearm in the first degree.
On December 20, 2016, defendant entered the apartment of the victim and shot him multiple times with a gun. Surveillance video outside of the victim's apartment building showed defendant exiting the building and driving away in a vehicle, which was ultimately discovered to be registered to him. The next day, defendant was stopped while driving his vehicle and, upon a search of the vehicle, a backpack was discovered with a gun therein. Defendant was subsequently charged with attempted murder in the second degree, assault in the first degree, criminal possession of a weapon in the second degree (three counts) and criminal use of a firearm in the first degree. Prior to trial, defendant moved to suppress, among other things, the statements he gave to law enforcement officials. A suppression hearing was held, after which County Court denied his motion. Following a jury trial, defendant was convicted as charged. Defendant was sentenced to concurrent prison terms, the greatest of which was 23 years, followed by five years of postrelease supervision. Defendant appeals. We affirm.
Defendant initially argues that venue of the trial in Chemung County was improper. Defendant, however, waived any objection as to improper venue (see generally People v Greenberg, 89 NY2d 553, 556 [1997]). Even if not waived, the People established by a preponderance of the evidence that the alleged crimes occurred in Chemung County (see People v Groom, 188 AD2d 674, 675 [1992]).
Defendant also contends that County Court should have granted his suppression motion because he was impermissibly questioned by law enforcement after invoking his right to counsel and to remain silent. We disagree. Upon an unequivocal request for counsel, all questioning by law enforcement must cease (see People v Slocum, 133 AD3d 972, 974 [2015], appeal dismissed 29 NY3d 954 [2017]). "Whether a particular request is or is not unequivocal is a mixed question of law and fact that must be determined with reference to the circumstances surrounding the request[,] including the defendant's demeanor, manner of expression and the particular words found to have been used by the defendant" (People v Glover, 87 NY2d 838, 839 [1995]). At the suppression hearing, one of the officers testified that, in response to questioning, defendant stated, "I don't know what you're talking about, so if you want to ask me questions, then I could get a lawyer and stuff." The officer also stated that he viewed this comment as a hypothetical request for counsel. In addition, after making this comment, defendant did not make any further statement indicating that he wanted counsel. In our view, defendant's isolated statement of "I could get a lawyer" did not constitute an unequivocal request for counsel. Given this, and viewing the suppression hearing evidence in its entirety, we conclude that the court correctly concluded that defendant did not unequivocally invoke his right to counsel (see People v Fridman, 71 NY2d 845, 846 [1988]; People v Engelhardt, 94 AD3d 1238, 1241 [2012], lv denied 19 NY3d 960 [2012]; compare People v Jemmott, 116 AD3d 1244, 1247 [2014]).
Defendant assails the verdict as not being supported by legally sufficient evidence. This argument, however, is unpreserved because the error claimed on appeal is not the error that was raised in defendant's trial motion to dismiss (see People v Ackerman, 173 AD3d 1346, 1348 [2019], lv denied 34 NY3d 949 [2019]; People v Cruz, 131 AD3d 724, 724 [2015], lv denied 26 NY3d 1087 [2015]). Notwithstanding the foregoing, because defendant also argues that the verdict was against the weight of the evidence, a claim not subject to a preservation requirement, we review the evidence adduced regarding each element of the charged crimes (see People v Hilton, 166 AD3d 1316, 1317-1318 [2018], lv denied 32 NY3d 1205 [2019]; People v Gabriel, 155 AD3d 1438, 1439 [2017], lv denied 31 NY3d 1081 [2018]). "Where, as here, a different outcome would not have been unreasonable, we weigh conflicting testimony, review any rational inferences that may be drawn from the evidence and evaluate the strength of such conclusions" (People v Ash, 162 AD3d 1318, 1318-1319 [2018] [internal quotation marks and citations omitted], lv denied 32 NY3d 1002 [2018]).
The victim testified at trial that, on December 20, 2016, he was at his apartment when defendant and one of defendant's former coworkers stopped by. Shortly thereafter, another individual came to the apartment. Defendant closed the door when the individual entered and the coworker checked the individual's pockets and took his phone. The victim testified that defendant then pulled out a gun. Defendant also unlocked the cylinder of the gun and showed the bullets to everyone in the room. The individual was ultimately given back his phone and was told he could leave, which the individual did. According to the victim, defendant complained that the victim had sold him defective bootleg movies. The victim testified that defendant's coworker then left the apartment, after which defendant pointed the gun at him and told him to go into his living room. Defendant then shot the victim in the leg, groin and arm.[FN1] As a consequence of the gunshots, the victim was in a coma for three days, underwent surgery and was hospitalized for almost two months. Surveillance video depicting the area outside the victim's apartment building showed defendant and his coworker driving away in a vehicle.
An investigator with the City of Elmira Police Department testified that he became aware that the vehicle was registered to defendant, and he conducted surveillance by defendant's residence on December 21, 2016. An officer with the same police department, who assisted with the surveillance, testified that, after defendant left his residence and drove away, he stopped him at a gas station. The officer observed marihuana in the front seat, detained defendant and subsequently transported him to the police department. A forensic identifier with the State Police testified that, on December 21, 2016, he searched the vehicle and found a loaded gun, which was in a backpack. DNA testing revealed that defendant was a significant contributor to the DNA found on the gun in the backpack.
Given that the record demonstrates that defendant was angry at the victim for selling allegedly defective DVDs and shot the victim multiple times with a gun, causing the victim serious physical injuries, we conclude, viewing the evidence in a neutral light, that the verdict convicting defendant of attempted murder in the second degree and assault in the first degree was not against the weight of the evidence (see People v Collier, 146 AD3d 1146, 1150-1151 [2017], lv denied 30 NY3d 948 [2017]; People v Mathews, 134 AD3d 1248, 1249-1250 [2015]; People v Mullings, 23 AD3d 756, 758 [2005], lvs denied 6 NY3d 756, 759 [2005]; People v Rivers, 17 AD3d 934, 936 [2005], lv denied 5 NY3d 768 [2005]). Nor do we agree with defendant's weight of the evidence claim regarding the charges of criminal use of a firearm in the first degree and criminal possession of weapon in the second degree (counts 3 and 4 of the indictment) — all of which are related to the incident at the victim's apartment on December 20, 2016. In this regard, the record discloses that defendant, while outside of his home or place of business, possessed a gun that he used to shoot the victim (see People v Stover, 178 AD3d 1138, 1139 [2019]; People v Speed, 134 AD3d 1235, 1236 [2015], lv denied 27 NY3d 1155 [2016]; People v Knox, 80 AD3d 887, 888-889 [2011], lv denied 16 NY3d 860 [2011]).
We reach a similar conclusion with respect to the verdict convicting defendant of criminal possession of weapon in the second degree under count 6 of the indictment, which pertains to the loaded gun found in the backpack on December 21, 2016 (see People v Smith, 173 AD3d 1441, 1443-1444 [2019], lvs denied 34 NY3d 951, 954 [2019]; People v Linares, 167 AD3d 1067, 1070 [2018], lv denied 33 NY3d 950 [2019]). Contrary to defendant's claim, the People were not required to prove that the gun discovered in his vehicle was the same gun used to shoot the victim. Furthermore, the record belies defendant's argument that the People failed to establish a chain of custody for the gun (see People v Gamble, 135 AD3d 1078, 1080 [2016], lv denied 27 NY3d 997 [2016]). In any event, any gaps in the chain of custody go to the weight to be accorded to such evidence (see People v Colon-Velazquez, 172 AD3d 1621, 1622 n [2019], lv denied 34 NY3d 929 [2019]; People v Franqueira, 143 AD3d 1164, 1168 [2016]).
Regarding defendant's assertion that his right to confront witnesses was violated, we find it to be without merit. Under the Sixth Amendment of the US Constitution, a defendant has the right to confront witnesses against him or her (see People v Brown, 13 NY3d 332, 338 [2009]; People v Wakefield, 175 AD3d 158, 168 [2019], lv denied 34 NY3d 1083 [2019]). To avoid infringing upon this right, "analysts who write reports that the prosecution introduces into evidence at trial must be made available for confrontation even if they possess the scientific acumen of Mme. Curie and the veracity of Mother Teresa" (People v Raucci, 109 AD3d 109, 121 [2013] [internal quotation marks, brackets and citations omitted], lv denied 22 NY3d 1158 [2014]). Defendant takes issue with a DNA report prepared by an analyst who was unable to testify at trial due to vacation plans. The People, however, indicated that they had no intention to offer the report of this analyst as part of their case-in-chief, and the record does not reveal that it was offered or admitted into evidence. As to the forensic scientist who did testify, he stated that he was a peer reviewer who did an independent analysis of the data. He looked over the data procured by the analyst and, after examining the relevant information, he prepared his own independent DNA report with his own conclusions. This DNA report was offered by the People. Given that the forensic scientist testified and was cross-examined, we find no Confrontation Clause violation (see People v Stahl, 141 AD3d 962, 965 [2016], lv denied 28 NY3d 1127 [2017], cert denied ___ US ___, 138 S Ct 222 [2017]).
Defendant argues that counts 3, 4 and 6 of the indictment — all of which charged defendant with criminal possession of a weapon in the second degree — must be dismissed as inclusory concurrent counts of criminal use of a firearm in the first degree (count 5 in the indictment). For defendant to prevail on this argument, he must first show that it is impossible to commit the greater crime — in this case, criminal use of a firearm in the first degree — without also at the same time committing the lesser crime — in this case, criminal possession of a weapon in the second degree (see People v Miller, 6 NY3d 295, 302 [2006]; People v Glover, 57 NY2d 61, 63 [1982]). "Such determination requires the court to compare the statutes in the abstract, without reference to any factual particularities of the underlying prosecution" (People v Repanti, 24 NY3d 706, 710 [2015] [citation omitted]). "[D]efendant must then show that there is a reasonable view of the evidence in the particular case that would support a finding that he committed the lesser offense but not the greater" (People v Glover, 57 NY2d at 63).
In our view, defendant failed to satisfy the first prong. As charged under count 5 of the indictment — criminal use of a firearm in the first degree — the People were required to establish, as relevant here, that defendant "display[ed] what appear[ed] to be a pistol, revolver . . . or other firearm" (Penal Law § 265.09 [1] [b]). Meanwhile, counts 3, 4 and 6 of the indictment charged defendant with criminal possession of a weapon in the second degree under Penal Law § 265.03 (1) (b) and (3), thereby requiring the People to prove, as relevant here, that defendant possessed a loaded firearm. Based on the specifically charged crimes, defendant could be found guilty of criminal use of a firearm in the first degree without actually possessing a loaded gun, which is a requirement for criminal possession of a weapon in the second degree. In other words, for criminal use of a firearm in the first degree, defendant need only display what appeared to be a gun, regardless of whether it was loaded. Accordingly, defendant's claim that the judgment convicting him under counts 3, 4 and 6 of the indictment should be reversed and said counts dismissed is without merit.
We reject defendant's claim that the imposed sentence was harsh and excessive. County Court considered various factors, including defendant's minimal criminal history, the information in the presentence report and the senseless and violent nature of the committed crimes. Given that the record fails to disclose an abuse of discretion or extraordinary circumstances, we see no reason to disturb the sentence (see People v Means, 35 AD3d 975, 976-977 [2006], lv denied 8 NY3d 948 [2007]; People v Wallace, 8 AD3d 753, 756 [2004], lv denied 3 NY3d 682 [2004]). Nor do we find merit in defendant's assertion that the court imposed the sentence based upon matters dehors the record. Defendant's remaining contentions, to the extent not specifically discussed herein, have been considered and are unavailing.
Egan Jr., J.P., Lynch, Clark and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: The individual who was previously in the victim's apartment testified that, after he and defendant's coworker left, he heard gunshots and then saw defendant exiting the apartment.