People v Dawson (2021 NY Slip Op 03632)





People v Dawson


2021 NY Slip Op 03632


Decided on June 10, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:June 10, 2021

110266
[*1]The People of the State of New York, Respondent,
v
Malik Dawson, Appellant.

Calendar Date:April 20, 2021

Before:Garry, P.J., Egan Jr., Aarons, Pritzker and Reynolds Fitzgerald, JJ.

Stephen W. Herrick, Public Defender, Albany (James A. Bartosik Jr. of counsel), for appellant.
P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for respondent.



Reynolds Fitzgerald, J.
Appeal from a judgment of the County Court of Albany County (Lynch, J.), rendered July 12, 2017, upon a verdict convicting defendant of the crime of sexual abuse in the first degree.
Defendant was charged in an indictment with one count of criminal sexual act in the first degree, one count of sexual abuse in the first degree and one count of menacing in the second degree stemming from allegations that he engaged in forcible oral sexual conduct with the victim. Following a jury trial, defendant was convicted of sexual abuse in the first degree and was acquitted of the remaining counts. Defendant was sentenced to a prison term of seven years, followed by 10 years of postrelease supervision. Defendant appeals.
Initially, we reject defendant's contention that County Court erred in denying his motion to suppress statements made to the police. "On a motion to suppress, the People bear the burden of proving beyond a reasonable doubt that the defendant's statement to police was voluntarily given, including that any custodial interrogation was preceded by the administration and the defendant's knowing waiver of his or her Miranda rights" (People v Garrand, 189 AD3d 1763, 1767 [2020] [internal quotation marks, brackets and citations omitted], lv denied ___ NY3d ___ [Apr. 11, 2021]; see People v Newell, 148 AD3d 1216, 1218-1219 [2017], lv denied 29 NY3d 1035 [2017]). "Once the People have met their burden, the burden of persuasion shifts to the defendant to adduce evidence supporting his or her contention that he or she did not comprehend his or her rights" (People v Garrand, 189 AD3d at 1768 [internal quotation marks, brackets and citation omitted]).
Defendant claims that he invoked his right to counsel shortly after the police began their interview of him, and, accordingly, all questioning should have stopped at that point. "[T]he right to counsel indelibly attaches as soon as a defendant in custody unequivocally requests the assistance of counsel. Whether a particular request is or is not unequivocal is a mixed question of law and fact that must be determined with reference to the circumstances surrounding the request, including the defendant's demeanor, manner of expression and the particular words found to have been used by the defendant" (People v Harris, 177 AD3d 1199, 1203 [2019] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 970 [2020]; see People v Meadows, 180 AD3d 1244, 1245 [2020], lv denied 35 NY3d 994 [2020]). Testimony at the hearing and a video of the police interview establish that defendant was administered his Miranda rights prior to being interviewed by the detective. The detective began the interview by reading the four parts of the warning and asked if defendant understood these rights. Although defendant stated, "yeah, definitely," defendant and the detective thereafter engaged in a colloquy, which included defendant indicating that he had an attorney — whose number was in his cell phone[*2].[FN1] However, when the detective asked defendant if he wanted his attorney present, defendant was vague, never responded affirmatively or negatively and instead stated, "I just really want to know what's going on." The detective informed defendant that he could not speak to defendant if he wanted his attorney to be present. The detective testified that at this point he was unsure if defendant wanted an attorney, so he left the interrogation room to speak to his supervisor and other detectives to determine how he should proceed. When the detective returned to the interrogation room, he repeatedly asked defendant if he wanted an attorney and each time defendant responded no. Whereupon the detective reread defendant his Miranda rights, and defendant stated that he understood them and wanted to speak to the detective.[FN2] At no time did defendant request his counsel to be present and he acted in a manner consistent with a desire to fully and frankly cooperate in providing information to the detective (see People v Bacalocostantis, 121 AD2d 812, 814 [1986], lv denied 68 NY2d 755 [1986]).
Given the totality of the circumstances, "and according deference to [County] Court's credibility assessment that [the detective] appeared frank, candid, and trustworthy, and his testimony had the general force and flavor of credibility and that the video of the interrogation was authentic and reliable, we will not disturb [County] Court's determination that defendant did not unequivocally invoke his right to have an attorney present" (People v Phoenix, 115 AD3d 1058, 1059-1060 [2014] [internal quotation marks and citations omitted], lv denied 23 NY3d 1024 [2014]; see People v Meadows, 180 AD3d at 1245). Further, defendant's statements and conduct indicate that he comprehended and knowingly, voluntarily and intelligently waived his right to an attorney and did not present any evidence to the contrary. As such, defendant failed to meet his burden of persuasion and County Court properly denied his suppression motion (see People v Garrand, 189 AD3d at 1768-1769; People v Phoenix, 115 AD3d at 1060).
Defendant next contends that the verdict was against the weight of the evidence due to discrepancies in the victim's testimony, her intoxication at the time of the assault and the lack of evidence that he ever threatened her or used force. "[W]hen undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Lukosavich, 189 AD3d 1895, 1896 [2020] [internal quotation marks and citations omitted]; see People v Forney, 183 AD3d 1113, 1114 [2020], lv denied 35 NY3d 1065 [2020]). "When conducting this review, we consider the evidence [*3]in a neutral light and defer to the jury's credibility assessments" (People v Gill, 168 AD3d 1140, 1140-1141 [2019] [internal quotation marks and citations omitted]). As relevant here, "[a] person is guilty of sexual abuse in the first degree when he or she subjects another person to sexual contact . . . [b]y forcible compulsion" (Penal Law § 130.65 [1]; see People v McClenos, 172 AD3d 1638, 1638 [2019], lv denied 33 NY3d 1107 [2019]). "'Forcible compulsion' means to compel by either: a. use of physical force; or b. a threat, express or implied, which places a person in fear of immediate death or physical injury . . . or in fear that he, she or another person will immediately be kidnapped" (Penal Law § 130.00 [8]).
At trial, the victim testified that she was homeless, received housing through a homeless program and collected cans for income. After conversing with defendant for a period of time, defendant told her that he had some cans that she could have at a garage located nearby. The victim and defendant walked to the garage and, once the victim was inside, defendant closed the door and told her to sit down. The victim testified that defendant unbuttoned her shirt and began fondling her breasts, took his penis out of his pants and tried to "shove it in [her] mouth." While attempting to do so, defendant slapped her in the ear and slapped her in the face with his penis. At one point, defendant grabbed the victim's arm causing her bracelet to cut her skin. She testified that she never gave him permission to engage with her in a sexual manner. However, she explained that she tried to remain calm and did not actively protest as defendant continued because she was "scared to death" and only wanted to "walk out of there without getting killed."
The victim's friend, an outreach supervisor and a program manager of her housing program all testified that when they encountered the victim shortly after the incident, she was crying, upset, scared and in shock. A forensic scientist with the State Police testified that she examined swabs from the victim's face and breasts that tested positive for sperm and prostate specific antigen, a protein found in very high concentrations of seminal fluid. Another forensic scientist with the State Police testified that she performed a DNA analysis on the swabs collected from the victim and a buccal swab collected from defendant, and the sperm fraction matched defendant's DNA profile, with the remaining swabs matching the victim's DNA profile. Defendant called a police officer who testified that the victim provided a different version of the events each time she repeated the incident and seemed as if she was intoxicated. Additionally, the victim admitted on cross-examination that she was uncertain if defendant made any threats until the end of their encounter and may have misspoke during her testimony to the grand jury.
Given the foregoing, it would not have been unreasonable for the jury to have resolved [*4]the credibility issues differently in this case and reach the opposite conclusion, as the victim admitted to some inconsistencies. However, the victim clearly and consistently testified that she did not consent to the act and that she was afraid that she would be hurt or killed. "Any inconsistencies in the victim's testimony and her likely intoxication at the time were fully explored at trial and did not render her testimony incredible as a matter of law" (People v Blackman, 90 AD3d 1304, 1308 [2011], lv denied 19 NY3d 971 [2012]). "[T]hese inconsistencies were minor and did not render [her] testimon[y] inherently unbelievable" (People v Kelsey, 174 AD3d 962, 964 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 982 [2019]; see People v Butkiewicz, 175 AD3d 792, 795 [2019], lv denied 34 NY3d 1076 [2019]). "[V]iewing the evidence in a neutral light and according deference to the jury's superior opportunity to assess witness credibility, we are satisfied that the verdict was in accord with the weight of the evidence" (People v Warrington, 155 AD3d 1450, 1452 [2017] [internal quotation marks and citations omitted]; see People v Shackelton, 177 AD3d 1163, 1165 [2019], lv denied 34 NY3d 1162 [2020]).
Defendant next contends that County Court improperly admitted the victim's medical records into evidence without redacting two references to the phrase "sexual assault," which impermissibly represented a legal conclusion that the jury is required to determine. "Hospital records fall within the business records exception to the hearsay rule as long as the information relates to diagnosis, prognosis or treatment" (People v Wright, 81 AD3d 1161, 1164 [2011], lv denied 17 NY3d 803 [2011] [citations omitted]; see CPL 60.10; CPLR 4518). Trial courts are afforded broad discretion in making evidentiary rulings and, absent an abuse of discretion, such rulings should not be disturbed on appeal (see People v Caden N., 189 AD3d 84, 96 [2020], lv denied 36 NY3d 1050 [2021]; People v Shepard, 83 AD3d 1298, 1299 [2011], lv denied 17 NY3d 809 [2011]). The sexual assault nurse examiner testified that she examined the victim and completed a report. This nurse further testified that she took the victim's medical history, performed a head to toe assessment of the victim and discussed a treatment plan with the victim. As the medical records were relevant to the victim's diagnosis, treatment and after care, the records were admissible (see People v Ortega, 15 NY3d 610, 617 [2010]). Moreover, during its instructions both before and after summations, County Court made it abundantly clear to the jurors that they are the finders of fact as to each element of the charge of sexual abuse in the first degree and that "you and you alone are the judges of the facts and you and you alone are responsible for deciding whether the defendant is guilty or not guilty." Accordingly, we find no abuse of discretion in County Court's admission of the medical records[*5](see People v Garrand, 189 AD3d at 1769).
Defendant next asserts that County Court erred in denying his motion for a mistrial following testimony by a crime analyst connecting defendant and his phone number via a police database, as the sole purpose of the testimony was to paint defendant as a criminal who has a propensity to commit crimes. "[W]hen there occurs during the trial an error or legal defect in the proceedings, or conduct inside or outside the courtroom, which is prejudicial to the defendant and deprives him [or her] of a fair trial," the trial court must declare a mistrial upon the motion of the defendant (CPL 280.10 [1]). "The decision to grant or deny a motion for a mistrial is within the trial court's discretion and its decision will not be disturbed unless it amounts to an abuse of discretion" (People v Conway, 179 AD3d 1218, 1220 [2020] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 941 [2020]).
At trial, a crime analyst testified that he ran a telephone number through multiple record management systems, which he explained were databases where police officers enter both their arrest reports and calls for service. His search yielded defendant's name and date of birth. After follow-up questions, the analyst testified that he also had access to non-police databases. County Court denied the motion for a mistrial, finding that the analyst's testimony provided the background for and a narrative as to how the police identified defendant. We agree. The analyst testified that the database consisted not only of arrest reports but also calls for police assistance. Additionally, any prejudice was lessened by the People's and County Court's follow-up questions as to other databases that the analyst could have utilized. Finally, any prejudice to defendant that may have occurred was not so substantial as to deprive defendant of a fair trial. Accordingly, County Court's denial of defendant's motion for a mistrial was not an abuse of discretion (see People v Conway, 179 AD3d at 1220; People v Newkirk, 75 AD3d 853, 857 [2010], lv denied 16 NY3d 834 [2011]).
Defendant finally contends that the sentence imposed was harsh and excessive. "It is well settled that a sentence that falls within the permissible statutory ranges will not be disturbed unless it can be shown that the sentencing court abused its discretion or that extraordinary circumstances exist warranting a modification in the interest of justice" (People v Barzee, 190 AD3d 1016, 1021 [2021] [internal quotation marks and citations omitted], lv denied 36 NY3d 1094 [2021]; see People v Hightower, 186 AD3d 926, 932 [2020], lv denied 35 NY3d 1113 [2020]). After reviewing defendant's criminal history, the seriousness of the offense and the fact that the sentence was within the statutory range, we discern no extraordinary circumstances or an abuse of discretion that would warrant a modification of the sentence (see People v Desrocher, 164 AD3d 1548, [*6]1550 [2018], lv denied 32 NY3d 1203 [2019]; People v Barnhill, 135 AD3d 1247, 1248 [2016]).
Garry, P.J., Egan Jr., Aarons and Pritzker, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: Defendant's cell phone was in the possession of the police.

Footnote 2: Defendant's argument, that his statements after this waiver must be suppressed because once counsel is requested Miranda rights cannot be waived absent the presence of counsel (see People v Harris, 93 AD3d 58, 66 [2012], affd 20 NY3d 912 [2012]), is meritless in light of our determination that defendant's request was not unequivocal.