People v Lundy (2023 NY Slip Op 03727)

People v Lundy

2023 NY Slip Op 03727

Decided on July 6, 2023

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 6, 2023

112239
[*1]The People of the State of New York, Respondent,
v
Sean Lundy, Appellant.

Calendar Date:June 5, 2023

Before:Garry, P.J., Lynch, Clark, Aarons and Ceresia, JJ.

Mitchell S. Kessler, Cohoes, for appellant.
Brian P. Conaty, Acting District Attorney, Monticello (Howard Block of counsel), for respondent.

Clark, J.
Appeal from a judgment of the County Court of Sullivan County (Frank J. LaBuda, J.), rendered December 18, 2019, upon a verdict convicting defendant of the crimes of conspiracy in the second degree and criminal possession of a controlled substance in the third degree (two counts).
Defendant, along with numerous other individuals, was charged in a 16-count indictment as a result of a cocaine trafficking investigation by state and local police in Sullivan County. As part of this investigation, police intercepted multiple text messages between defendant and Reynaldo Moises Sanchez. These texts showed that Sanchez regularly supplied defendant with 40 to 50 grams of cocaine, which defendant then cooked into crack cocaine. During the investigation, police also intercepted communications between Sanchez and multiple individuals, some of whom he supplied with cocaine or instructed to sell cocaine at the street level. One individual, Jimmy Gonzalez, stored cocaine in his house for Sanchez, and 237 grams of cocaine were found in his house upon his arrest. Upon defendant's arrest, police seized 50 grams of cocaine and $1,410 in cash from his residence.
In the indictment related to this drug trafficking, defendant was charged with two counts of conspiracy in the second degree (counts 4 and 5) (see Penal Law § 105.15) and two counts of criminal possession of a controlled substance in the third degree (counts 7 and 8) (see Penal Law § 220.16 [1], [12]). Count 4 alleged that defendant, along with his codefendants, conspired to cause the commission of possession of eight ounces or more of cocaine, while count 5 was predicated on a conspiracy to operate as a major trafficker (see Penal Law § 220.77 [1]).[FN1] Following a jury trial, defendant was acquitted of count 4 but convicted of counts 5, 7 and 8. He was thereafter sentenced to a prison term of 8&frac13; to 25 years on count 5 and prison terms of nine years, with two years of postrelease supervision, on counts 7 and 8, to run consecutive to his sentence on count 5. Defendant appeals, and limits his brief to his conviction of conspiracy in the second degree under count 5 of the indictment.
Defendant argues that his conviction of conspiracy in the second degree is not supported by legally sufficient evidence and is against the weight of the evidence, as the People failed to prove his specific intent to enable Sanchez to operate as a major trafficker. "When assessing the legal sufficiency of a jury verdict, we view the facts in the light most favorable to the People and examine whether there is a valid line of reasoning and permissible inferences from which a rational jury could have found the elements of the crime proved beyond a reasonable doubt" (People v Rivera, 212 AD3d 942, 944 [3d Dept 2023] [internal quotation marks and citations omitted], lv denied 39 NY3d 1113 [2023]; see People v Campbell, 196 AD3d 834, 835 [3d Dept 2021], lv denied 37 NY3d 1025 [2021]). "In conducting a weight of the evidence review, we must [*2]view the evidence in a neutral light and determine first whether a different verdict would have been unreasonable and, if not, weigh the relative probative force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Gertz, 204 AD3d 1166, 1167-1168 [3d Dept 2022] [internal quotation marks and citations omitted], lv denied 38 NY3d 1070 [2022]; see People v Dawson, 195 AD3d 1157, 1160 [3d Dept 2021], affd 38 NY3d 1055 [2022]). "When conducting [a weight of the evidence] review, we . . . defer to the jury's credibility assessments" (People v Gill, 168 AD3d 1140, 1140-1141 [3d Dept 2019] [internal quotation marks and citations omitted]; accord People v Vega, 170 AD3d 1266, 1268 [3d Dept 2019], lv denied 33 NY3d 1074 [2019]).
To prove that defendant was guilty of conspiracy in the second degree under count 5, the People were required to show that defendant, "with intent that conduct constituting a class A felony be performed, . . . agree[d] with one or more persons to engage in or cause the performance of such conduct" (Penal Law § 105.15). The relevant class A felony alleged here was operating as a major trafficker; "[a] person is guilty of operating as a major trafficker when . . . [s]uch person acts as a director of a controlled substance organization during any period of [12] months or less, during which period such controlled substance organization sells one or more controlled substances, and the proceeds collected or due from such sale or sales have a total aggregate value of [$75,000] or more" (Penal Law § 220.77 [1]). A controlled substance organization consists of "four or more persons sharing a common purpose to engage in conduct that constitutes or advances the commission of a felony under [Penal Law article 220]," and a director is "a person who is the principal administrator, organizer, or leader of a controlled substance organization or one of several principal administrators, organizers, or leaders of [such an] organization" (Penal Law § 220.00 [18], [19]). Furthermore, "[a] person shall not be convicted of conspiracy unless an overt act is alleged and proved to have been committed by one of the conspirators in furtherance of the conspiracy" (Penal Law § 105.20).
The evidence at trial, which primarily consisted of the testimony of State Police investigator Timothy Dymond, showed that while investigating cocaine dealing by an individual named Edward Drayton, police in Sullivan County became aware of Sanchez's position as a supplier of cocaine to Drayton and other individuals, including defendant. As part of this investigation, police intercepted text messages between defendant and Sanchez. Dymond, who was qualified as an expert, explained that these texts showed that defendant, on multiple occasions, purchased cocaine from Sanchez and cooked it into crack cocaine. In one conversation, defendant [*3]requested that Sanchez compensate him for selling him 34 grams of poor-quality cocaine instead of the 40 he ordered. In another, Sanchez asked defendant when and how much cocaine he needed, because Sanchez "wan[ted to] make an order." Defendant replied that he needed 40 grams, but could not afford to take any loss on it, and Sanchez replied that it was good product, but that he had to raise the cost to $40 a gram for defendant, from $35, because he was paying more for it. Sanchez also agreed to give defendant an extra 10 grams to make up for the earlier shortfall. On another occasion, Sanchez asked that defendant cook crack cocaine for him, which defendant agreed to do. Dymond also testified that a gram of cocaine was sold to users for approximately $100 in Sullivan County, and that 40 grams of cocaine was a dealer quantity.
Additionally, the People introduced evidence relating to other individuals connected to Sanchez. This proof included text messages from individuals purchasing dealer quantities of cocaine from Sanchez, texts in which Sanchez refused to sell cocaine in user amounts but instructed others to perform such sales, and texts between Sanchez and Drayton regarding Sanchez's issues with his supplier and supplying large quantities of cocaine to Drayton. Dymond also testified that Sanchez sold crack cocaine to another individual, Rolando Nieves, around the same time that defendant cooked crack cocaine for Sanchez. Gonzalez, one of the individuals in Sanchez's network, testified that he allowed Sanchez to store packages of 50, 100 or 200 grams in his house three to five times over the two years prior to trial in exchange for some cocaine for his personal use. Dymond testified that defendant was never connected to any of the other individuals with whom Sanchez was in contact or to their stash houses. Gonzalez added that he did not know defendant and had never heard of him.
Even viewing the evidence in the light most favorable to the People, defendant's conviction of conspiracy in the second degree based upon the underlying crime of operating as a major trafficker is not supported by legally sufficient evidence. The evidence presented by the People shows only that defendant intended to purchase dealer quantities of cocaine from Sanchez and cooked crack cocaine for Sanchez when requested, but wholly fails to connect defendant to Sanchez's broader cocaine dealing network, as defendant was not linked to any of the stash houses or the other individuals with whom Sanchez was in contact.[FN2] Although Penal Law § 220.77 (1) does not contain a defined mens rea term, it is not a strict liability crime (see Penal Law § 15.15 [2]), and its plain language requires proof that defendant engaged in conduct constituting the administration, organization or leadership of a controlled substance organization. The proof offered by the People does not set forth a valid line of reasoning to permissibly infer that this specific intent was met here. While defendant's [*4]purchase of dealer quantities of cocaine from Sanchez and an agreement to cook crack cocaine for him might be sufficient to establish his knowledge of a broader cocaine distribution network (see People v Riggins, 28 AD3d 934, 935 [3d Dept 2006], lv denied 6 NY3d 897 [2006]; People v Brooks, 268 AD2d 889, 890 [3d Dept 2000], lv denied 95 NY2d 794 [2000]), they are not sufficient to infer that defendant intended Sanchez to administer, organize or lead a controlled substance organization, as the knowledge of such an organization is not equivalent to the intent to control one.
Furthermore, the People similarly failed to show that Sanchez's organization collected proceeds from the sale of cocaine greater than or equal to $75,000, establishing only the typical sale price of $100 per gram in Sullivan County, and the amounts that Gonzalez and defendant possessed at the time of their respective arrests. However, the People failed to demonstrate that Sanchez and his organization, acting on some sort of agreement with defendant, actually collected at least $75,000 in proceeds, as required by Penal Law § 220.77 (1). Therefore, defendant's conviction for conspiracy in the second degree is not supported by legally sufficient evidence, as the underlying class A felony of operating as a major trafficker was not established, and, thus, count 5 must be dismissed (see People v Green, 194 AD3d 1106, 1112 [3d Dept 2021]; People v Hiedeman, 189 AD3d 1902, 1906 [3d Dept 2020], lv denied 36 NY3d 1120 [2021]; compare People v Adrian, 173 AD3d 431, 431-432 [1st Dept 2019], lv denied 34 NY2d 1125 [2020]; People v Rodriguez, 121 AD3d 1435, 1441 [3d Dept 2014], lv denied 24 NY3d 1122 [2015]).[FN3]
Defendant's remaining contentions are rendered academic by the dismissal of count 5.
Garry, P.J., Lynch, Aarons and Ceresia, JJ., concur.
ORDERED that the judgment is modified, on the law, by reversing defendant's conviction of conspiracy in the second degree under count 5 of the indictment; said count dismissed and the sentence imposed thereon vacated; and, as so modified, affirmed.

Footnotes

Footnote 1: The underlying crime here, operating as a major trafficker, differentiates this case from other recent conspiracy in the second degree cases before this Court (compare People v Williams, 138 AD3d 1233, 1234 [3d Dept 2016], lv denied 28 NY3d 939 [2016]; People v Whitehead, 130 AD3d 1142, 1142-1143 [3d Dept 2015], affd 29 NY3d 956 [2017]).

Footnote 2: At trial, County Court permitted the People to introduce text messages between Sanchez and other individuals in his network, despite the fact that the People failed to make a prima facie showing of any connection, let alone conspiracy, between defendant and those individuals. This failure renders the text messages inadmissible hearsay, as the requirements for the coconspirator exception were not met (see People v Kalabakas, 183 AD3d 1133, 1144 [3d Dept 2020], lv denied 35 NY3d 1067 [2020]; People v Hernandez, 155 AD2d 342, 344 [1st Dept 1989], lv denied 75 NY2d 813 [1990]; People v Conklin, 139 AD2d 156, 162 [3d Dept 1988], lv denied 72 NY2d 1044 [1988]; compare People v Caban, 5 NY3d 143, 150-151 [2005]).

Footnote 3: Even if we were to find that the People met their burden on legal sufficiency, we would find that the conviction is against the weight of the evidence (see People v Adams, 201 AD3d 1031, 1033-1034 [3d Dept 2022], lv denied 38 NY3d 948 [2022]).