People v Lukosavich (2020 NY Slip Op 07953)





People v Lukosavich


2020 NY Slip Op 07953


Decided on December 24, 2020


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: December 24, 2020

110170

[*1]The People of the State of New York, Respondent,
v
Matthew A. Lukosavich, Appellant.

Calendar Date: November 19, 2020

Before: Garry, P.J., Egan Jr., Aarons and Pritzker, JJ.


Keith D. Dayton, Public Defender, Cortland, for appellant.
Michael D. Ferrarese, Special Prosecutor, Norwich (Karen Fischer McGee, New York Prosecutors Training Institute, Inc., Albany, of counsel), for respondent.



Pritzker, J.
Appeal from a judgment of the County of Cortland County (Campbell, J.), rendered January 18, 2018, upon a verdict convicting defendant of the crime of grand larceny in the fourth degree.
Defendant was charged by indictment with one count each of burglary in the second degree, grand larceny in the fourth degree and conspiracy in the fourth degree stemming from an incident in March 2016 wherein the victim's apartment was broken into and several valuable items were stolen. After a jury trial, defendant was convicted of grand larceny in the fourth degree and acquitted of the other charges. After County Court denied defendant's motion to set aside the verdict, defendant was sentenced to a prison term of 1&frac13; to 4 years. Defendant appeals.
Defendant challenges the verdict as legally insufficient and against the weight of the evidence. "When considering a challenge to the legal sufficiency of the evidence, we view the evidence in the light most favorable to the People and evaluate whether there is a valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v McCabe, 182 AD3d 772, 772-773 [2020] [internal quotation marks and citations omitted]; see People v Glover, 160 AD3d 1203, 1204 [2018]). "In contrast, when undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then, if not, weigh the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Dickinson, 182 AD3d 783, 783-784 [2020] [internal quotation marks, brackets and citations omitted], lv denied 35 NY3d 1065 [2020]; see People v Creech, 165 AD3d 1491, 1492 [2018]). "When conducting this review, we consider the evidence in a neutral light and defer to the jury's credibility assessments" (People v Kelsey, 174 AD3d 962, 963 [2019] [internal quotation marks and citations omitted], lv denied 34 NY3d 982 [2019]; see People v Gill, 168 AD3d 1140, 1140-1141 [2019]).
Grand larceny in the fourth degree requires the People to prove that, with intent to deprive another of property or to appropriate the same to himself[, herself] or to a third person, the defendant steals property having a value of more than $1,000 (see Penal Law §§ 155.05 [1]; 155.30 [1]). As relevant here, "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]; see People v Chapman, 182 AD3d 862, 863 [2020]). "The corroborative evidence need only tend to connect the defendant to the crime; it need not establish all the elements of the offense" (People [*2]v Heimroth, 181 AD3d 967, 968 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1027 [2020]; see People v Steinberg, 79 NY2d 673, 683 [1992]).
The victim testified that, on the day of the burglary, she lived with her then-boyfriend in an apartment in the City of Cortland, Cortland County. The victim left her apartment at approximately 12:00 p.m. and did not return until four hours later, when she found that the door to her apartment was broken, her apartment had been ransacked and there were several missing items. She testified that she compiled a list of missing items, which included two laptops, three tablets, jewelry and a safe. The safe contained, among other things, $2,500 in cash and the adoption records for her two cats from the Schuyler County Humane Society. The victim also testified to missing a silver makeup bag. The victim contacted the police and, while officers were still at her apartment, she noticed that two of her acquaintances, Joseph Bernhardt and Kurtis Montgomery, had deleted her on social media, which made her suspicious. Later that day, the victim tracked one of the stolen tablets to a town where she knew Bernhardt and Montgomery lived.
A patrol officer and a sergeant with the City of Cortland Police Department both testified regarding their involvement in the burglary investigation. The patrol officer testified that, upon his arrival to the victim's apartment, there appeared to be a forced entry and the apartment was "completely trashed." The sergeant, who also responded to the victim's apartment, testified that he took photographs and interviewed the victim and the victim's boyfriend. The sergeant's investigation led him to interview Bernhardt and Montgomery, who both confessed to being involved in the burglary along with defendant. After Montgomery informed the sergeant that the proceeds of the burglary were located at defendant's residence, the sergeant obtained a search warrant and conducted a search of the home where defendant lived with his father and his grandmother. The sergeant testified that, while conducting his search at and around the residence, he located a safe in a wooded area up a hill near the house and that there was ash in the safe as well as a card related to cat adoption. The patrol officer, who assisted in the search, testified that he found a small silver bag in the loft of the garage and that the safe appeared to have been forced open and damaged and that inside was a document from the Schuyler County Humane Society.
Defendant's accomplices, Bernhardt and Montgomery, both testified at trial. Their testimony established that, on the morning of the burglary, Bernhardt and Montgomery discussed stealing drugs from the victim's boyfriend because they wanted drugs but did not have any money. The pair decided to contact defendant because stealing was "his thing,"[FN1] and they picked him up sometime between 12:00 p.m. and 1:00 p.m. at a supermarket in the City of Ithaca[*3], Tompkins County. Bernhardt testified that all three men formed a plan in which Bernhardt was to be the driver and Montgomery and defendant would enter the apartment to get the drugs. Montgomery testified that defendant forced open the door and began to ransack the apartment. Montgomery testified that items such as credit cards, laptops and a safe were taken. When Bernhardt went to pick Montgomery and defendant up, he observed the two men carrying a safe and a few items wrapped in pillowcases, including drug paraphernalia and electronics. Bernhardt drove himself, Montgomery and defendant back to Bernhardt's house and transferred the items from his car to Montgomery's car. Montgomery testified that he then drove defendant to his residence and left almost all of the stolen items at defendant's house, mostly in his bedroom. He testified that, to his belief, defendant sold all of the property. Montgomery also testified that the safe was not removed from his car until the next day, when he and defendant carried it behind defendant's residence to what defendant referred to as a "fort." There, defendant broke open the safe and burned the contents. Both Bernhardt and Montgomery testified that they entered into a plea bargain in relation to their charges that required them to testify at defendant's trial.
Defendant's sole witness at trial was his grandmother, who testified that she had owned the residence where, in March 2016, she lived with defendant and defendant's father and that, behind the property, on top of the hill predominantly owned by a neighbor, defendant and his friends had built a fort when they were children. The grandmother testified that, the morning of the burglary, she drove defendant to Ithaca and dropped him off at a meeting at 11:05 a.m. On cross-examination, she testified that defendant's father picked defendant up at 1:15 p.m. She also testified that, the next day, Bernhardt, who is also her grandson, came to her house with someone else and defendant got in the car and left with them. The grandmother was shown photographs of the location where the safe was recovered, which she identified as being on the hill behind her residence.
Based on the foregoing, we find that the accomplice testimony [FN2] was supported by corroborative evidence that tended to connect defendant to the larceny. At trial, Montgomery and Bernhardt both testified that defendant participated in stealing from the victim and her boyfriend, including removing the safe, among other items. Montgomery also testified that they brought the safe up to the area behind defendant's residence and burned the contents. Later, the police officers located the safe in that location with ash at the bottom of the safe and a card from the Schuyler County Humane Society. A silver makeup bag was recovered from the garage which, at trial, the victim identified as hers, as well as the safe. She also testified that she adopted one of her cats from the Schuyler County Humane [*4]Society, the organization for which there was a card found inside the safe. Accordingly, we find the accomplice testimony to be "adequately corroborated" (People v Heimroth, 181 AD3d at 969; see People v Davis, 28 NY3d 294, 303 [2016]). As to the weight of the evidence, a different finding would not have been unreasonable as the jury could have discredited the accomplice testimony and concluded that defendant did not participate in the crime. Nevertheless, given that there was very little testimony at trial that conflicted with the accomplices' testimony, we defer to the credibility determinations made by the jury and find that the verdict is not against the weight of the evidence (see People v Dickinson, 182 AD3d at 788; People v Burwell, 183 AD3d 173, 180, lv denied 35 NY3d 1043 [2020]).
Defendant also contends that he was denied his constitutional right to a fair trial by County Court's preclusion of his alibi testimony. Pursuant to CPL 250.20 (3), "[i]f at trial the defendant calls such an alibi witness without having served the demanded notice of alibi, . . . the court may exclude testimony of such witness relating to the alibi defense." "Precluding a criminal defendant from proffering evidence in support of his or her own case implicates the Compulsory Process Clause of the Sixth Amendment" (People v Perkins, 166 AD3d 1285, 1287 [2018] [citations omitted], lv denied 33 NY3d 980 [2019]; see Taylor v Illinois, 484 US 400, 407-409 [1988]). Therefore, "'such sanction clearly is the most drastic available and would be appropriate only in the most egregious circumstances,' such as when the omission is willful and motivated by a desire to obtain a tactical advantage" (People v Kelly, 288 AD2d 695, 697 [2001], lv denied 97 NY2d 756 [2002], quoting People v Brown, 274 AD2d 609, 610 [2000]; see People v Perkins, 166 AD3d at 1287).
Here, there is no dispute that defendant's purported alibi notice was not filed within the timeframe set forth in CPL 250.20 (1). Rather, on October 6, 2017, a little more than three weeks prior to the scheduled trial date,[FN3] defendant sent an email to the People with a "Notice of Potential Alibi-type Witnesses." The notice provided that defendant intended to call his father and his grandmother to testify as to defendant's whereabouts around the time of the burglary. Defendant noted that this testimony did not include where defendant was at noon — the time of the burglary as set forth in the bill of particulars. It does not appear that defendant also sent this notice to County Court. On October 10, 2017, the People, by letter, requested that the court preclude these witnesses because the notice was untimely and the testimony would be prejudicial to the People. The next day, the court signed a decision and order, granting the People's request for preclusion of these witnesses. Notably, defendant was not provided the opportunity to oppose the People's application or to set forth good cause for the delay (see CPL [*5]250.20 [1]). Subsequently, defendant moved for reconsideration of the court's decision to preclude the alibi witnesses, arguing that the People were not prejudiced as they already knew that his father was a potential witness in that they provided defendant an unsigned statement taken by a police officer. The court treated defendant's motion as one to renew or reargue and denied it, holding that defendant did not meet the standard for either type of relief.[FN4] The court also held that, if it were to reach the merits, it would reach the same conclusion, as defendant failed to show good cause and did not comply with the Criminal Procedure Law requirements.
Although we agree with the People that defendant's constitutional argument advanced on appeal is unpreserved as it was not raised before County Court (see People v Bruno, 111 AD3d 488, 490 [2013], lv denied 23 NY3d 1018 [2014]), we choose to exercise of our interest of justice jurisdiction to take corrective action (see CPL 470.15 [6] [a]). To that end, County Court abused its discretion by precluding defendant from introducing testimony from defendant's father at trial.[FN5] The court rested its entire conclusion on the failure to comply with the Criminal Procedure Law and that good cause was not shown, despite the fact that defendant was not given an opportunity to respond to the People's informal motion to preclude the alibi testimony. Notably, the court did not make any findings that defendant had an improper purpose in providing the late notice nor did it weigh the possibility of prejudice to the People against the right of defendant to present a defense (see People v Perkins, 166 AD3d at 1287-1288; compare People v LeFebvre, 45 AD3d 1175, 1176 [2007]). Instead, the court, without hearing from defendant, implemented the most "drastic sanction" without considering any lesser sanctions that may have protected the People from potential prejudice (People v Brown, 274 AD2d at 610). In making the appropriate inquiry, alibi testimony would have been important to defendant's defense given that much of the People's argument was based on accomplice testimony and that the People would not have been prejudiced as they were already aware of the father's statement. "Therefore, we find that County Court violated defendant's constitutional right to present a defense" (People v Perkins, 166 AD3d at 1288 [citations omitted]).
Furthermore, we do not find that this error was harmless beyond a reasonable doubt inasmuch as there is a reasonable possibility that the error contributed to the conviction (see People v Crimmins, 36 NY2d 230, 237 [1975]; People v Perkins, 166 AD3d at 1288). The evidence introduced was "largely circumstantial" as it rested primarily on the accomplice testimony, which was not entirely credited by the jury (People v Harris, 177 AD3d 1199, 1205-1206 [2019], lv denied 35 NY3d 970 [2020]; see People v Rouse, 34 NY3d 269, 281 [2019]). Further, the jury made inquiries into what was required [*6]to find defendant guilty of grand larceny in the fourth degree and requested to hear all of the grandmother's testimony again, suggesting that it struggled to reach a verdict (see People v Harris, 177 AD3d at 1205-1206). The evidence against defendant rested primarily on credibility determinations of two witnesses who had favorable cooperation agreements and, given the jury's acquittal of defendant of the burglary and conspiracy charges, it is clear that it did not find the accomplice testimony entirely credible. Thus, had defendant's father testified that he was with defendant on the day of the incident, around the time that the burglary was said to have taken place, there is a reasonable probability that the jury may have reached a different verdict (see People v Perkins, 166 AD3d at 1288; People v Collins, 30 AD3d 1079, 1080 [2006], lv denied 7 NY3d 811 [2006]; People v Brown, 274 AD2d at 610). Accordingly, defendant's judgment of conviction must be reversed and the matter remitted for a new trial on count 2 of the indictment, charging defendant with grand larceny in the fourth degree. In light of this determination, defendant's remaining contentions have been rendered academic.
Garry, P.J., Egan Jr. and Aarons, JJ., concur.
ORDERED that the judgment is reversed, as a matter of discretion in the interest of justice, and matter remitted to County Court of Cortland County for a new trial on count 2 of the indictment.



Footnotes

Footnote 1: County Court issued a limiting instruction that this testimony was not to be considered for proving propensity or a predisposition to commit the crimes charged.

Footnote 2: The jury received instructions that Montgomery and Bernhardt were accomplices as a matter of law and that a defendant could not be convicted solely on the testimony of an accomplice.

Footnote 3: According to the record, at the time that defendant sent his purported alibi notice, defendant's trial was scheduled only as a back-up trial for October 30, 2017 and would only occur on that date if the lead trial settled.

Footnote 4: Problematically, County Court noted that a motion to reargue "must be made on the original papers and new facts may not be considered." However, because defendant did not have an opportunity to respond to the People's informal motion to preclude, he was unable to assert any arguments or facts in the first instance. Similarly, the court indicated that a motion to renew "is not a second chance freely given to parties who have not exercised due diligence in making their first factual presentation," despite that defendant did not have the opportunity to set forth an initial factual presentation.

Footnote 5: As the grandmother did testify at trial, no argument is raised on appeal relative to her testimony.