People v Green (2021 NY Slip Op 02841)





People v Green


2021 NY Slip Op 02841


Decided on May 6, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:May 6, 2021

110160
[*1]The People of the State of New York, Respondent,
v
Messiah Green, Appellant.

Calendar Date:March 11, 2021

Before:Garry, P.J., Egan Jr., Clark, Aarons and Reynolds Fitzgerald, JJ.

Tina K. Sodhi, Alternate Public Defender, Albany (Steven M. Sharp of counsel), for appellant.
P. David Soares, District Attorney, Albany (Michael C. Wetmore of counsel), for respondent.



Clark, J.
Appeal from a judgment of the Supreme Court (McDonough, J.), rendered January 12, 2018 in Albany County, upon a verdict convicting defendant of the crimes of robbery in the second degree (three counts), assault in the second degree, grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree (four counts).
Sometime during the 8:00 hour on the evening of March 27, 2017, the victim was walking in his neighborhood when he encountered three men that held him up at gun point, struck him in the head several times and stole his iPhone and wallet, which contained several credit cards and a debit card. The victim reported the incident shortly after it occurred, and law enforcement was able to track the location of the stolen cell phone with the "Find my iPhone" application. Ultimately, based on real-time location data received from the application, law enforcement stopped a vehicle with four occupants — defendant and his codefendants, Zecharihas Chaney, Kieshawn Chaney and Raymeen Cooper — and discovered the victim's wallet and cell phone inside. Defendant was subsequently indicted, together with his codefendants, on the charges of robbery in the second degree (three counts), assault in the second degree, grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree (four counts). Defendant was convicted as charged following a jury trial and he moved, prior to sentencing, to set aside the verdict pursuant to CPL 330.30 (3). Supreme Court denied the motion without a hearing and thereafter sentenced defendant, as a second felony offender, to various concurrent sentences, the longest of which was 10 years in prison, followed by five years of postrelease supervision, for each of the three convictions of robbery in the second degree. Defendant appeals, and we now reverse and dismiss the indictment against defendant.
Defendant argues that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence. Specifically, defendant asserts that the People failed to prove that he was one of the three perpetrators who robbed and assaulted the victim or that he knowingly possessed the victim's stolen credit and debit cards. Defendant also argues that the evidence failed to establish the element of physical injury required for his convictions of robbery in the second degree and assault in the second degree, as charged in counts 1 and 4 of the indictment.[FN1] We agree with defendant on all three points and, thus, find that his convictions are not supported by legally sufficient evidence and are against the weight of the evidence.
We turn first to defendant's convictions for robbery in the second degree, assault in the second degree and grand larceny in the fourth degree under counts 1 through 5 of the indictment. As relevant here, "[a] person is guilty of robbery in the second degree when he [or she] forcibly steals property and" he or she "[*2]is aided by another person actually present" or, "[i]n the course of the commission of the crime or immediate flight therefrom, he [or she] or another participant in the crime . . . [c]auses physical injury to any person who is not a participant in the crime" or "[d]isplays what appears to be a
. . . firearm" (Penal Law § 160.10 [1], [2]). Additionally, "[a] person is guilty of assault in the second degree when . . . [i]n the course of and in furtherance of the commission or attempted commission of a felony, . . . or of immediate flight therefrom, he [or she], or another participant . . . causes physical injury to a person other than one of the participants" (Penal Law § 120.05 [6]). Further, "[a] person is guilty of grand larceny in the fourth degree when he [or she] steals property and when . . . [t]he property, regardless of its nature and value, is taken from the person of another" (Penal Law § 155.30 [5]). As with all convictions, the People must prove the issue of identity beyond a reasonable doubt — that is, that the defendant was the person who committed the charged crimes (see People v Warren, 76 NY2d 773, 775 [1990]; People v Whalen, 59 NY2d 273, 279 [1982]).
At trial, the victim testified that he was walking alongside the road in his neighborhood on the evening in question and that he "was carrying a red flashing baton so [that] cars could see [him]" in the dark. He stated that, as he was walking, he heard footsteps rapidly approaching behind him and felt a hand hit his shoulder and spin him around. The victim testified that he then observed a man standing directly in front of him with a gun and two other men — one on either side. The victim asserted that he was shoved to his knees and that the perpetrators began shouting at him to turn over his belongings. He stated that he was struck on the left and right sides of his head as he was fumbling to take out his wallet and cell phone and that he was struck again — knocking him onto his side — once he turned them over. The victim testified that he "must have blacked out for a second" and that, as he was coming out of a "daze[]," he felt "something bump into [his] head" and then felt and heard a "puff, click . . . three or four times in rapid succession." The victim stated that he remained lying on his side and "eventually heard a car driving away," at which point he "slowly started picking [himself] up." The victim testified that it took him "a couple minutes to jog home" and that, once he arrived home, he relayed his encounter to his spouse and then called 911.
The evidence reflected that several law enforcement officers responded to the victim's home, where the victim had already begun tracking his stolen cell phone with the "Find my iPhone" application. Law enforcement officers that responded to the victim's home testified that the victim reported being robbed and assaulted by three black men and that, with the assistance of the "Find my iPhone" application, they coordinated [*3]a search to locate the stolen wallet and cell phone. Law enforcement officers involved in the search testified that, when they began tracking the cell phone, the application indicated that the cell phone was at a particular liquor store in the City of Albany. However, as established by the evidence, law enforcement thereafter determined, based upon the speed at which the location data was updating, that the cell phone had left the liquor store in a vehicle. The testimony demonstrated that law enforcement tracked the cell phone over several blocks in the City of Albany before ultimately stopping the vehicle containing the cell phone. The evidence, including testimony and dash cam video footage, established that four black men were in the vehicle at the time that it was pulled over, with Zecharihas Chaney in the driver seat, Kieshawn Chaney in the front passenger seat, Cooper in the rear driver side seat and defendant in the rear passenger side seat. The victim's cell phone and wallet were found during a search of the vehicle, but a gun was not.
The evidence presented by the People did not establish a firm timeline of events. The victim did not testify to the approximate time of the robbery and assault. Rather, in the course of questioning the victim, the prosecutor supplied the approximate time of "a little bit before 8:30" p.m.[FN2] The People failed to put on any proof that revealed the time at which the victim made the 911 call, when the responding law enforcement officers arrived at the victim's home or when the vehicle containing the cell phone was stopped. However, video footage obtained from the liquor store demonstrated that the vehicle arrived at the liquor store around 8:41 p.m., where it remained for a total of six to seven minutes. The footage reveals that, during that time, both Zecharihas Chaney and Kieshawn Chaney separately spoke to the occupant(s) of a nearby parked vehicle and that Zecharihas Chaney entered the liquor store. The footage does not reveal whether there are additional passengers in the vehicle. It is unclear how soon after the vehicle left the liquor store that it was stopped by the police.
On the issue of identity, the testimony demonstrated that, in the aftermath of the robbery and assault, the victim could not provide descriptions of his assailants, aside from stating that he had been robbed and assaulted by three black men. At trial, the victim testified that he had been able to make some observations of his assailants for "[a] few seconds" after being spun around. According to the victim, the armed man in the middle wore a tight fighting mask and "a dark sweatshirt or jacket" with "silver accents of writing" and "had a lighter skin tone" and "was a little shorter maybe" than the men on either side of him. With respect to the man to the left of the armed man, the victim testified that the bottom half of the man's face was covered, that the man was taller than him and the armed man and that the man was [*4]black with a "darker skin tone than the man in the middle." As for the man to the right of the armed man, the victim stated that the man's face was covered and that he "also appeared a little taller" and had a "darker skin tone" than the armed man. The victim testified that he was unsure what color clothing the unarmed men were wearing. Upon cross-examination, the victim acknowledged that his testimony at trial was the first time that he had provided any description of his assailants' skin tones, having simply described them as "black" on all previous occasions, including at the preliminary hearing and before the grand jury.
In our view, the evidence presented by the People failed to prove beyond a reasonable doubt that defendant was one of the three perpetrators of the robbery and assault. The evidence established that all three of defendant's codefendants pleaded guilty to robbing the victim. The evidence also established that Kieshawn Chaney was wearing a dark sweatshirt with white insignia and a hat/mask at the time of his arrest and has a lighter skin tone than defendant and Cooper, which together with his presence in the vehicle and guilty plea could reasonably lead to the inference that he was the armed robber. However, the only evidence from which to infer that defendant was one of the other two perpetrators was his presence in the vehicle at the time it was pulled over and his "darker skin tone." With respect to defendant's presence in the vehicle, the evidence reflects that the vehicle's whereabouts prior to arriving at the liquor store at 8:41 p.m. were unknown, thereby leaving at least 11 minutes following the robbery and assault in which defendant could have entered the vehicle. Additionally, the evidence demonstrated that the firearm alleged to have been used in the armed robbery was not in the vehicle at the time it was stopped, the absence of which allows for the inference that it was disposed of between the robbery and the traffic stop or that someone left the vehicle with the firearm prior to the traffic stop. With respect to skin tone, the victim provided a description of skin tone for the first time at trial and his testimony revealed that the perpetrators' faces were partially covered, that it was dark outside and that he looked at his assailants for only "[a] few seconds."[FN3] Although the victim testified that the men on either side of the armed man were "taller" than the armed man, there was no evidence establishing the height of defendant or his codefendants.[FN4] Moreover, it is now well recognized that there is a higher likelihood of inaccuracy where, as here, cross-race identification is involved (see People v Boone, 30 NY3d 521, 528-529 [2017]; CJI2d[NY] Identification—One Witness). In all, upon review of the evidence, we find that the People failed to prove, beyond a reasonable doubt, defendant's identity as one of the perpetrators of the robbery and assault. As such, we find that defendant's convictions for robbery [*5]in the second degree, assault in the second degree and grand larceny in the fourth degree, as charged in counts 1 through 5 of the indictment, must be dismissed as unsupported by legally sufficient evidence and against the weight of the evidence.
The People's proof was also lacking on the element of physical injury, as required for defendant's conviction for robbery in the second degree under count 1 of the indictment (see Penal Law § 160.10 [2]) and his conviction of assault in the second degree under count 4 of the indictment (see Penal Law § 120.05 [6]). Penal Law § 10.00 (9) defines "physical injury" as "impairment of physical condition or substantial pain." Here, the evidence regarding the victim's injuries primarily consisted of the victim's testimony that he had been struck in the head by his assailants and that he had "a small cut . . . up near the top of [his] head," which "was bleeding a lot." Although the People introduced photographs taken of the cut before it was cleaned and tended to, the evidence did not reveal the size and depth of the cut. Nor did the victim testify to experiencing pain or any other symptoms resulting from the cut or the blows to his head. Further, there was no indication that the victim sought medical care following the incident. Given the paucity of proof regarding the victim's injuries, we agree with defendant that the evidence fails to establish that the victim suffered a physical injury within the meaning of Penal Law § 10.00 (9) so as to support the convictions under counts 1 and 4 of the indictment (see People v Jimenez, 55 NY2d 895, 896 [1982]; People v McDowell, 28 NY2d 373, 375 [1971]; cf. Matter of Shawnell UU., 240 AD2d 947, 948 [1997]; compare People v Guidice, 83 NY2d 630, 636 [1994]; People v Hogencamp, 300 AD2d 734, 735 [2002]).
We likewise find that defendant's convictions for criminal possession of stolen property in the fourth degree, as charged in counts 6 through 9 of the indictment, are not supported by legally sufficient evidence and are against the weight of the evidence. To secure convictions on the four counts of criminal possession of stolen property in the fourth degree charged in the indictment, based upon the presence of three credit cards and a debit card in the stolen wallet, the People had to prove that defendant knowingly possessed the stolen credit and debit cards "with intent to benefit himself or a person other than the owner thereof" (Penal Law § 165.45 [2]). Pursuant to Penal Law § 10 (8), "'[p]ossess' means to have physical possession or otherwise to exercise dominion or control over tangible property." "A person who knowingly possesses stolen property is presumed to possess it with intent to benefit himself or a person other than [the] owner" and "[a] person who possesses two or more stolen credit cards [or] debit cards . . . is presumed to know that such . . . cards were stolen" (Penal Law § 165.55 [1], [3]). In cases of constructive possession, such as this [*6]one, the defendant's knowing possession of stolen property may be proved circumstantially through the conduct of the defendant (see People v Traynham, 85 AD2d 748, 749 [1981]; People v Hadley, 67 AD2d 259, 262 [1979]).
The evidence established that the stolen wallet and cell phone were ultimately located in the back seat of the vehicle, where defendant and Cooper were seated. However, there was conflicting and unsubstantiated evidence as to where exactly the wallet was found in the back seat. A detective involved in the traffic stop testified that, once the occupants were cleared from the vehicle, he observed a wallet "open on the back seat," but that, because it was "a dark street," he had "trouble seeing whose identity" was on the exposed driver's license.[FN5] The detective testified that, without first taking a picture of its location and without wearing gloves, he picked up the wallet and observed that the driver's license belonged to the victim, a white male. He stated that he thereafter "placed [the wallet] in the same location that [he] grabbed it from." However, the dash cam video recording of the traffic stop refutes the detective's testimony and instead depicts the detective toss the wallet back inside the vehicle after examining it. The detective sergeant that executed a search of the vehicle first testified that "[t]he wallet was found in the middle of the rear seat," but later stated that the wallet, as depicted in photographic evidence, was found on the "rear driver's [side] seat," where Cooper was seated. The detective sergeant testified that the cell phone was found underneath the floor mat below the rear driver side seat.
In our view, the foregoing circumstantial evidence falls short of proving, beyond a reasonable doubt, that defendant constructively possessed the wallet and the credit and debit cards contained therein or that any such possession was knowing. Although the testimony demonstrated that the wallet was found somewhere in the back seat, there was no other evidence connecting defendant to the stolen property or demonstrating his awareness of its presence inside the vehicle. As discussed, the victim asserted that there were three black males involved in the robbery and assault and there were four black males in the vehicle when it was stopped some 30 to 40 minutes afterward, leaving open the possibility that one of the passengers entered the vehicle after the robbery and assault (compare People v Rivera, 82 NY2d 695, 696 [1993]; People v Santiago, 174 AD3d 134, 138-139 [2019], lv denied 34 NY3d 954 [2019]; People v Traynham, 85 AD2d at 749). There was no indication that defendant owned the vehicle and the evidence did not place the stolen property in the location where defendant was seated — the rear passenger side seat. The People did not present any DNA or fingerprint evidence from the wallet or cell phone. Nor did they present proof of any statements or conduct on the part of defendant that could lead to [*7]the conclusion that defendant knowingly possessed the stolen property (compare People v Santiago, 174 AD3d at 138-139; People v Dennis, 88 AD2d 963, 963 [1982]; People v Hadley, 67 AD2d at 262). Finally, with regard to the knowledge element, although the evidence demonstrated that the wallet was found open with the victim's driver's license exposed, the testimony also demonstrated that it was dark and that the wallet may have been situated beneath Cooper before he exited the vehicle. Thus, upon consideration of the foregoing, we find that the evidence was insufficient to establish that defendant constructively possessed the victim's stolen credit and debit cards and that any such possession was knowing. We therefore find defendant's convictions for criminal possession of stolen property in the fourth degree to be unsupported by legally sufficient evidence and against the weight of the evidence.
In light of our determination, we reverse the judgment of conviction and dismiss the indictment against defendant. Thus, defendant's remaining contentions have been rendered academic.
Garry, P.J., Egan Jr., Aarons and Reynolds Fitzgerald, JJ., concur.
ORDERED that the judgment is reversed, on the law and the facts, and indictment dismissed.



Footnotes

Footnote 1: Defendant failed to preserve this specific argument, as he did not raise it in his trial motion for dismissal. Nevertheless, when engaging in a weight of the evidence analysis, this Court necessarily determines whether each element of the charged crimes was proven beyond a reasonable doubt (see People v McMillan, 185 AD3d 1208, 1209 [2020], lvs denied 35 NY3d 1112, 1114 [2020]).

Footnote 2: The indictment alleges that the robbery and assault occurred at approximately 8:20 p.m.

Footnote 3: The victim did not testify as to the lighting conditions of the roadway on which he encountered the perpetrators, and the People did not introduce any evidence revealing such conditions.

Footnote 4: The only evidence regarding height was the victim's testimony that he stands 5 feet, 5 inches tall.

Footnote 5: The detective elaborated that "it was very hard to see what was on that ID inside a dark vehicle."