People v Davis (2021 NY Slip Op 06883)





People v Davis


2021 NY Slip Op 06883


Decided on December 9, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 9, 2021

110919
[*1]The People of the State of New York, Respondent,
v
Maurice Davis, Appellant.

Calendar Date:October 12, 2021

Before:Garry, P.J., Lynch, Aarons and Pritzker, JJ.

Dana L. Salazar, East Greenbush, for appellant.
Mary Pat Donnelly, District Attorney, Troy (George J. Hoffman Jr. of counsel), for respondent.



Pritzker, J.
Appeal from a judgment of the County Court of Rensselaer County (Young, J.), rendered October 17, 2018, upon a verdict convicting defendant of the crimes of grand larceny in the fourth degree, criminal possession of stolen property in the fourth degree and petit larceny.
On September 16, 2017, defendant and his brother allegedly stole two televisions and a sound bar from a Walmart store located in the Town of East Greenbush, Rensselaer County. Defendant's brother was arrested while allegedly engaged in a similar crime at the store the next day, and, during an ensuing custodial interview with police, he named defendant as his accomplice in the subject theft. Officers with the East Greenbush Police Department (hereinafter EGPD) then presented the brother with still images from the store's surveillance video at the time of the subject theft, and the brother identified defendant as the person in certain of those stills, further providing defendant's date of birth. With that information, officers obtained a known photograph of defendant (hereinafter referred to as the known photograph) from a law enforcement database, compared that photograph to the still images and arrested him. Defendant was thereafter charged by indictment with grand larceny in the fourth degree, criminal possession of stolen property in the fourth degree and petit larceny. He thereafter moved for, among other relief, a Wade hearing, after which County Court determined that the aforementioned identification was not overly suggestive. After a one-day jury trial, defendant was found guilty as charged. Defendant was thereafter sentenced, as a second felony offender, to concurrent prison terms of 2 to 4 years for his grand larceny and possession convictions and to a lesser concurrent term for the petit larceny conviction. Defendant appeals.
Defendant contends that the verdict was legally insufficient and against the weight of the evidence because the People did not establish his identity. "When considering a challenge to the legal sufficiency of the evidence, [this Court] view[s] the evidence in the light most favorable to the People and evaluate[s] whether there is any valid line of reasoning and permissible inferences which could lead a rational person to the conclusion reached by the jury on the basis of the evidence at trial and as a matter of law satisfy the proof and burden requirements for every element of the crime charged" (People v Lukosavich, 189 AD3d 1895, 1895-1896 [2020] [internal quotation marks and citations omitted]). Importantly, "[a] defendant may not be convicted of any offense upon the testimony of an accomplice unsupported by corroborative evidence tending to connect the defendant with the commission of such offense" (CPL 60.22 [1]). "[W]hen undertaking a weight of the evidence review, we must first determine whether, based on all the credible evidence, a different finding would not have been unreasonable and then, if not, weigh the relative probative [*2]force of conflicting testimony and the relative strength of conflicting inferences that may be drawn from the testimony to determine if the verdict is supported by the weight of the evidence" (People v Lukosavich, 189 AD3d at 1896 [internal quotation marks and citations omitted]). "When conducting this review, we consider the evidence in a neutral light and defer to the jury's credibility assessments" (People v Butcher, 192 AD3d 1196, 1198 [2021] [internal quotation marks and citations omitted], lv denied 36 NY3d 1118 [2021]).
"Grand larceny in the fourth degree requires the People to prove that, with intent to deprive another of property or to appropriate the same to himself, herself or to a third person, the defendant steals property having a value of more than $1,000" (People v Lukosavich, 189 AD3d at 1896; see Penal Law §§ 155.05 [1]; 155.30 [1]). As to criminal possession of stolen property in the fourth degree, the People must prove that the defendant "knowingly possesse[d] stolen property, with intent to benefit himself[,] [herself] or a person other than an owner thereof or to impede the recovery by an owner thereof, and when . . . [t]he value of the property exceeds [$1,000]" (Penal Law § 165.45 [1]). "A person is guilty of petit larceny when he [or she] steals property" (Penal Law § 155.25). Finally, "[a]s with all convictions, the People must prove the issue of identity beyond a reasonable doubt — that is, that the defendant was the person who committed the charged crimes" (People v Green, 194 AD3d 1106, 1108 [2021]).
At trial, the assistant manager of the store testified that, on September 16, 2017, two televisions and a sound bar had been taken from the store and that the value of these items totaled $2,174 before sales tax. He further testified that, upon notification of pushed-open entrance doors in a closed section of the store, he reviewed surveillance video of the door, and he subsequently saved the footage to a CD that he gave to police when he reported the incident, along with still images from that video. The CD with the video and four of the still images were admitted into evidence and published to the jury. The CD contains six videos allegedly depicting defendant pushing a cart to the electronics department where the individual alleged to be the brother loads into the cart two large, flat boxes bearing the Samsung logo and one relatively smaller box. Two minutes later, surveillance video shows the two individuals exiting the store through an apparently nonresponsive automatic door, which the individuals then pushed open to exit; the individual alleged to be defendant physically pushed the cart containing the three above-mentioned boxes through the doors and out of the store. The face of the person alleged to be defendant is visible in the surveillance video just before he leaves the store.
Griffin Hotaling, an officer with the EGPD, testified that he responded to the assistant manager's call about the larceny. [*3]Hotaling reviewed the surveillance video and still images provided by the assistant manager and that, at some point the day after the alleged theft, he was able to identify both individuals in the still images. Hotaling identified defendant in court as one of the individuals depicted. Michael Guadagnino, a detective with the EGPD, testified that he spoke to the brother who gave him defendant's name in connection with the subject crimes.[FN1] Guadagnino stated that he then compared one of the still images to the known photograph associated with defendant's name in the "RICI system" and concluded that the individual depicted in the still image was defendant. A copy of the known photograph was received into evidence and Guadagnino identified defendant as the individual depicted in the surveillance video.
The brother testified, after asserting his Fifth Amendment privilege against self-incrimination, that he did not recall going with defendant to the store on September 16, 2017 and stealing two televisions and a sound bar. He also did not recall his conversation with Hotaling or Guadagnino during their investigation. The People then showed the brother the surveillance video still images, and he testified that he had never seen the images before but that one of the individuals depicted in two of the images looked like him and the individual in another of the images "could be" defendant; with respect to the latter, the brother qualified that he was unsure because the image was "kind of blurry."
Viewed in the light most favorable to the People, we find that the independent evidence proffered by the People — the surveillance video coupled with the testimony of the officers and the known photograph — sufficiently corroborated the very equivocal accomplice testimony offered by the brother (see People v Pichardo, 160 AD3d 1044, 1047-1048 [2018], lv denied 31 NY3d 1151 [2018]; People v Myrick, 135 AD3d 1069, 1073 [2016]; People v Pagan, 103 AD3d 978, 981 [2013], lv denied 21 NY3d 1018 [2013]).[FN2] As to the weight of the evidence, another verdict would not have been unreasonable because the jury could have discredited the equivocal testimony from the brother and found certain of the low-quality still images not to be probative, and rationally concluded that the People did not prove, beyond a reasonable doubt, that defendant is one of the individuals depicted. That said, viewing the evidence in a neutral light, the surveillance video, still images, known photograph and testimony from the brother establishes defendant's identity as one of the perpetrators of the subject crimes. Further, the surveillance video and the assistant manager's testimony established the remaining elements of each count — that the items' total value exceeded $1,000 and that the items were taken without permission by bringing them out of the store through an otherwise inoperative exterior door in a section of the store closed to shoppers (see Penal Law §§ 155.05 [1]; 155.25, 155.30 [*4][1]; 165.45 [1]) — from which the jury could reasonably infer defendant's culpable mental state (see People v Sanon, 179 AD3d 1151, 1155 [2020], lv denied 35 NY3d 973 [2020]; People v Shortell, 173 AD3d 1364, 1366 [2019], lv denied 34 NY3d 937 [2019]).
Defendant also contends that the admission of Guadagnino's testimony about the statements made by the brother during the police interview violated defendant's Confrontation Clause rights. Defendant, however, only objected to Guadagnino's testimony on hearsay grounds — at which point the People clarified that it was admitted for a nonhearsay purpose. Thus, his contention with respect to the Confrontation Clause is unpreserved (see People v Wright, 81 AD3d 1161, 1164-1165 [2011], lv denied 17 NY3d 803 [2011]).
Defendant argues that County Court improperly permitted the People to call the brother as a witness because he expressed his intention to invoke his Fifth Amendment privilege against self-incrimination. "The decision to permit the People to call a witness who has already indicated that he or she will refuse to testify is one resting within the sound discretion of the trial court. Once a witness has communicated that intent, the trial court must determine whether any interest of the [s]tate in calling the witness outweighs the possible prejudice to [the] defendant resulting from the unwarranted inferences that may be drawn by the jury from the witness's refusal to testify" (People v Berg, 59 NY2d 294, 298 [1983] [internal citations omitted]; see People v Diaz, 249 AD2d 698, 700 [1998], lv denied 92 NY2d 924 [1998]). "Absent a conscious and flagrant attempt by the prosecutor to build a case out of the inferences arising from the use of the testimonial privilege or without some indication that the witness's refusal to testify adds critical weight to the People's case in a form not subject to cross-examination, reversal is not warranted" (People v Alston, 71 AD3d 684, 685 [2010] [internal quotation marks and citation omitted], lv denied 14 NY3d 885 [2010]; see People v Berry, 27 NY3d 10, 16 [2016]).
It is clear from the record that the People were of the opinion that the brother could not invoke his Fifth Amendment privilege because he had already pleaded guilty. Regardless of the accuracy of that assumption (see Mitchell v United States, 526 US 314, 321-322 [1999]), the fact that the People believed that the privilege was unavailable and, supported by that belief, successfully requested that County Court compel the brother to testify cuts against a finding that the People sought to build their case on the brother's assertions of testimonial privilege (see People v Berg, 59 NY2d at 298; People v Diaz, 249 AD2d at 700). Moreover, during the closing statement, the People did not reference the brother's invocation of the privilege nor suggest that any inference should be drawn therefrom (see People v Diaz, 249 AD2d at 700). As to the utilization of inferences drawn from the brother's invocation [*5]of the Fifth Amendment privilege to "unfairly prejudice . . . defendant by adding critical weight to the [People's] case in a form not subject to cross-examination" (People v Berry, 27 NY3d at 16 [internal quotation marks, brackets and citations omitted]), the brother only invoked the privilege three times, each time County Court directed him to answer,[FN3] thus rendering those responses subject to cross-examination, and, as a result, "there was no danger of the jury drawing improper inferences" (id. at 17 n 2; compare People v Vargas, 86 NY2d 215, 218-219 [1995]). Consequently, the court did not abuse its discretion in permitting the People to call the brother to testify despite foreknowledge of his intent to invoke testimonial privilege.
Defendant also contends that County Court erred in denying two of his motions for a mistrial. As a general rule, the decision to grant or deny a mistrial is a matter within the trial court's discretion (see People v Ortiz, 54 NY2d 288, 292 [1981]; People v Silver, 168 AD3d 1225, 1227 [2019], lvs denied 33 NY3d 948, 954 [2019]). The first motion for a mistrial was based upon alleged prosecutorial misconduct during the opening statement. To that end, a mistrial motion alleging prosecutorial misconduct will be granted only where such misconduct compromises a defendant's right to a fair trial (see People v Doherty, 37 AD3d 859, 860 [2007], lv denied 9 NY3d 843 [2007]; People v McCombs, 18 AD3d 888, 890 [2005]). Thus, a mistrial will not be granted based only on allegations that the prosecutor made fleeting improper comments that "do not reflect a flagrant and pervasive pattern of prosecutorial misconduct and [are] not egregious" (People v Delaney, 42 AD3d 820, 822 [2007] [internal quotation marks and citations omitted], lv denied 9 NY3d 922 [2007]; see People v Meadows, 183 AD3d 1016, 1022 [2020], lv denied 35 NY3d 1047 [2020]).
During his opening statement, the prosecutor stated that Hotaling would testify that he compared the still images from the surveillance video to the known photograph of defendant and that he was "able to make a positive identification of [defendant] as the individual who pushed the cart" containing the alleged stolen items. Defendant objected to "positive identification," which objection County Court sustained, and the prosecutor immediately corrected himself by stating that Hotaling will "tell you if he recognized anyone in those photos." The prosecutor then stated that Guadagnino would testify as to "what he did to identify the individual who was in the store and how he identified that individual as [defendant]." The prosecutor's comment with respect to Hotaling, to the extent that it was improper at all, was fleeting and immediately corrected upon defendant's sustained objection, thus falling far short of the flagrant, pervasive or egregious misconduct that compels a mistrial (see People v Wright, 88 AD3d 1154, 1158 [2011], lv denied 18 NY3d 863 [2011]; People v Delaney, 42 AD3d [*6]at 822). Further, the prosecutor's comment about Guadagnino's planned testimony was not improper and was merely a statement of the facts to which he would later testify, namely, that he independently identified defendant (see People v Hinojoso-Soto, 161 AD3d 1541, 1546 [2018], lv denied 32 NY3d 938 [2018]; People v Castro, 281 AD2d 935, 936 [2001], lv denied 96 NY2d 860 [2001]). Based on the foregoing, County Court appropriately denied defendant's application for a mistrial on the basis of prosecutorial misconduct.
Defendant also alleges that County Court's response to the discovery of two jurors and one alternate juror taking notes without permission was inadequate and prejudicial to him, and, therefore, the court should have granted his other application for a mistrial. To that end, it is within the court's discretion to determine that a juror's behavior is disqualifying and require that juror's dismissal (see CPL 270.35 [1]; People v Herring, 19 NY3d 1094, 1095-1096 [2012]; cf. People v Rogers, 157 AD3d 1001, 1009-1010 [2018], lv denied 30 NY3d 1119 [2018]).
Neither defendant nor the People requested that jurors be allowed to take notes, and County Court did not permit notetaking. Nevertheless, during Hotaling's direct examination, defendant and the court noticed two jurors and one alternate juror apparently taking notes. Defendant moved for a mistrial, arguing that he had been deprived of a fair trial due to the jurors taking notes without the proper instructions and because he could not be assured that those jurors were paying adequate attention to the trial. Under questioning by the court, the People and defendant, juror Nos. 8 and 9 separately stated that they took notes on pads that they brought into the courtroom, did not miss any of the testimony due to their notetaking, kept their pads with them during recesses and did not share the notes with anyone else. Juror No. 8 stated that she took notes only during testimony, but juror No. 9 stated that he began taking notes during opening statements. Juror No. 14 — who was alternate juror No. 2 — stated that he brought a notepad into the courtroom but did not take any notes. Rejecting defendant's renewed application for a mistrial based on juror No. 9's impermissible notetaking during opening statements, the court instead collected and destroyed the notes taken by juror Nos. 8 and 9, discharged juror No. 9 only and replaced him with alternate juror No. 1 and instructed the jury that notetaking was prohibited given the trial's expected short duration.
Here, defendant failed to demonstrate that the jurors' unsanctioned notetaking was prejudicial and denied him a fair trial (see CPL 280.10 [1]; People v Ortiz, 54 NY2d at 292; People v Burden, 108 AD3d 859, 860-861 [2013], lv denied 22 NY3d 1197 [2014]). County Court made appropriate inquiries of the relevant jurors, and, with respect to juror No. 8 and alternate juror No. 2, who were not discharged, the court was entitled to credit [*7]their assurances that they were not distracted from the trial (see People v Herring, 19 NY3d at 1095-1096; cf. People v Brown, 136 AD2d 1, 14 [1988], lv denied 72 NY2d 857 [1988], cert denied 488 US 897 [1988]). Moreover, in confiscating the jurors' notes and explicitly prohibiting further notetaking, the court largely mitigated the potential perils of juror notetaking, for example, overreliance on notes or undue deference to "the juror with the best notes" (People v Hues, 92 NY2d 413, 418 [1998]).
Defendant contends that he was deprived of his right to the effective assistance of counsel because trial counsel allegedly failed to inform County Court that he suffers from a traumatic brain injury and failed to request accommodations to allow him to follow and actively participate in the trial. "A claimed violation of the constitutional right to the effective assistance of counsel will not survive judicial scrutiny so long as the evidence, the law, and the circumstances of a particular case, viewed in totality and as of the time of the representation, reveal that the attorney provided meaningful representation" (People v Dickinson, 182 AD3d 783, 789 [2020] [internal quotation marks and citations omitted], lv denied 35 NY3d 1065 [2020]; see People v Honghirun, 29 NY3d 284, 289 [2017]).
Initially, defendant's contention that he was unable to fully understand and participate in the trial because of counsel's alleged failure is predominately based on facts outside of the record, rendering his ineffective assistance of counsel claim better suited for development via a CPL article 440 motion (see People v Drayton, 189 AD3d 1888, 1892 [2020], lv denied 36 NY3d 1119 [2021]; People v Griffin, 134 AD3d 1228, 1230 [2015], lv denied 27 NY3d 1132 [2016]). To the extent that his claim is based on the record, it is meritless as the record shows that trial counsel advocated for accommodations for defendant based on the effects of his traumatic brain injury, and defendant points to no particular instance where he required an accommodation and counsel failed to ask for one (compare People v Sposito, 140 AD3d 1308, 1312-1313 [2016], affd 30 NY3d 1110 [2018]). The record also indicates that trial counsel capably advocated for defendant, filed appropriate pretrial motions, lodged several objections and vigorously cross-examined witnesses, including a thorough cross-examination of the brother. Accordingly, insofar as the record reveals, defendant received the meaningful representation to which he is constitutionally entitled (see People v Olson, 162 AD3d 1249, 1251 [2018], lv denied 32 NY3d 1067 [2018]; People v Crippen, 156 AD3d 946, 952-953 [2017]).
Defendant contends that County Court's imposition of the maximum sentence was harsh and excessive and impermissibly penalized him for exercising his trial right. Initially, we find defendant's allegation that his sentence was retaliatory to be without merit. In support of this claim, defendant cites only to the [*8]drug court option that he rejected prior to trial and the comparatively more lenient sanction imposed on the brother, neither of which "constitute proof that he was penalized for exercising his right to trial" (People v Hahn, 159 AD3d 1062, 1067 [2018], lv denied 31 NY3d 1117 [2018]; see People v Baber, 182 AD3d 794, 803 [2020], lv denied 35 NY3d 1064 [2020]; People v Hagaman, 139 AD3d 1183, 1186 [2016], lv denied 28 NY3d 930 [2016]). Notably, as part of the plea agreement, the brother pleaded guilty to the lesser charge of petit larceny. Defendant, however, opted not to accept a plea agreement. In reviewing the sentencing parameters for the charges for which defendant was convicted after trial, it is evident that County Court did not have significant discretion. To that end, as a second felony offender, the sentencing range for defendant's convictions for grand larceny in the fourth degree and criminal possession of stolen property in the fourth degree is a mandatory indeterminate sentence of imprisonment, the least of which is a sentence of 1½ to 3 years and the greatest of which is 2 to 4 years (see Penal Law §§ 60.05 [6]; 70.06, 155.30 [1]; 165.45 [1]). In view of defendant's prodigious criminal history, which includes 29 prior convictions, the majority of which are for petit larceny, and his failure to take responsibility for his crimes, County Court did not abuse its discretion in imposing the maximum sentence within the permissible statutory range, and defendant has failed to demonstrate any extraordinary circumstance warranting a reduction of his sentence in the interest of justice (see People v Burns, 188 AD3d 1438, 1443 [2020], lvs denied 36 NY3d 1055, 1060 [2021]; People v Cole, 177 AD3d 1096, 1103 [2019], lv denied 34 NY3d 1015 [2019]). Defendant's remaining contentions have been examined and found to be lacking in merit.
Garry, P.J., Lynch and Aarons, JJ., concur.
ORDERED that the judgment is affirmed.



Footnotes

Footnote 1: After an unsuccessful objection from defendant on hearsay grounds, this statement was offered for its effect on Guadagnino and not for its truth.

Footnote 2: As defendant's convictions are based on legally sufficient evidence, defendant is precluded from challenging the sufficiency of the evidence before the grand jury (see CPL 210.30 [6]).

Footnote 3: To the extent that defendant argues that County Court erred in directing the brother to answer despite asserting the privilege against self-incrimination, defendant failed to object at the time of trial, and, thus, this argument is unpreserved (see generally People v Smith, 193 AD3d 1260, 1269 [2021], lv denied 37 NY3d 968 [2021]).